T.C. Memo. 2007-15

UNITED STATES TAX COURT

DONALD ERTZ, Petitioner <u>v</u>.
COMMISSIONER OF INTERNAL REVENUE, Respondent

Docket No. 20336-04L.                Filed January 24, 2007.

<u>Jaret R. Coles</u> and <u>Terri A. Merriam</u>, for petitioner.

<u>Gregory M. Hahn</u> and <u>Thomas N. Tomashek</u>, for respondent.

MEMORANDUM FINDINGS OF FACT AND OPINION

HAINES, <u>Judge</u>:  Petitioner filed a petition with this Court in response to a Notice of Determination Concerning Collection Action(s) Under Section 6320 and/or 6330 (notice of

determination) for 1982 through 1988, 1993, and 1997.[1]  Pursuant

to section 6330(d), petitioner seeks review of respondent's

determination.  The issues for decision are:  (1) Whether

respondent abused his discretion in sustaining the proposed

collection action; and (2) whether petitioner is liable for the

increased rate of interest on tax-motivated transactions under

section 6621(c), I.R.C. 1986.[2]

FINDINGS OF FACT

Some of the facts have been stipulated and are so found.

The first, second, third, fourth, fifth, and sixth stipulations

of fact and the attached exhibits are incorporated herein by this

reference.[3]

---

[1]  Unless otherwise indicated, all section references are to
the Internal Revenue Code, as amended, and all Rule references
are to the Tax Court Rules of Practice and Procedure.  Amounts
are rounded to the nearest dollar.

[2]  Before the Tax Reform Act of 1986, Pub. L. 99-514, sec.
1511(a), 100 Stat. 2744, subsec. (c) of sec. 6621 was designated
subsec. (d).  The additional interest applies only after Dec. 31,
1984.  Sec. 6621(c) was repealed as of Dec. 31, 1989, by the
Omnibus Budget Reconciliation Act of 1989, Pub. L. 101-239, sec.
7721(b), 103 Stat. 2399.

[3]  Respondent reserved relevancy objections to many of the
exhibits attached to the stipulations of fact.  Fed. R. Evid. 402
provides the general rule that all relevant evidence is
admissible, while evidence which is not relevant is not
admissible.  Fed. R. Evid. 401 defines relevant evidence as
"evidence having any tendency to make the existence of any fact
that is of consequence to the determination of the action more
probable or less probable than it would be without the evidence."
While the relevance of some exhibits is certainly limited, we
find that the exhibits meet the threshold definition of relevant
(continued...)

Petitioner resided in Lodi, California, when he filed his petition. At the time of trial, petitioner was 65 years old, he had been married for 32 years, and his wife (Mrs. Ertz) was 58.

In 1985, petitioner became a partner in TBS Durham Genetic Engineering 1985-5, Ltd. (DGE 85-5), a partnership organized and operated by Walter J. Hoyt III (Hoyt).

From about 1971 through 1998, Hoyt organized, promoted, and operated more than 100 cattle breeding partnerships. Hoyt also organized, promoted, and operated sheep breeding partnerships. From 1983 to his subsequent removal by the Tax Court in 2000 through 2003, Hoyt was the tax matters partner of each Hoyt partnership. From approximately 1980 through 1997, Hoyt was a licensed enrolled agent, and as such, he represented many of the Hoyt partners before the Internal Revenue Service (IRS). In 1998, Hoyt's enrolled agent status was revoked. Hoyt was convicted of various criminal charges in 2000.[4]

---

[3](...continued)
evidence and are admissible. The Court will give the exhibits only such consideration as is warranted by their pertinence to the Court's analysis of petitioner's case.

Respondent also objected to many of the exhibits on the basis of hearsay. Even if we were to receive those exhibits into evidence, they would have no impact on our findings of fact or on the outcome of this case.

[4] Petitioner asks the Court to take judicial notice of certain "facts" in other Hoyt-related cases and apply judicial estoppel to "facts respondent has asserted in previous [Hoyt-related] litigation". We will do neither.

(continued...)

DGE 85-5 issued petitioner Schedules K-1, Partner's Share of Income, Credits, Deductions, etc., for 1985 and 1986.[5] The Schedules K-1 reflected petitioner's shares of DGE 85-5's losses and his cost bases in "property eligible for investment credit". Petitioner timely filed his 1985 and 1986 Federal income tax returns, reporting total partnership losses from DGE 85-5 of $42,378 and $36,324, respectively. Petitioner reported

---

[4](...continued)

A judicially noticeable fact is one not subject to reasonable dispute in that it is either (1) generally known within the territorial jurisdiction of the trial court or (2) capable of accurate and ready determination by resort to sources whose accuracy cannot reasonably be questioned. Fed. R. Evid. 201(b). Petitioner is not asking the Court to take judicial notice of facts that are not subject to reasonable dispute. Instead, petitioner is asking the Court to take judicial notice of the truth of assertions made by taxpayers and the Commissioner in other Hoyt-related cases. Such assertions are not the proper subject of judicial notice.

The doctrine of judicial estoppel prevents a party from asserting in a legal proceeding a claim that is inconsistent with a position successfully taken by that party in a previous proceeding. New Hampshire v. Maine, 532 U.S. 742, 749 (2001). Among the requirements for judicial estoppel to be invoked, a party's current litigating position must be "clearly inconsistent" with a prior litigating position. Id. at 750-751. Petitioner has failed to identify any clear inconsistencies between respondent's current position and his position in any previous litigation.

[5] The Schedules K-1 for 1985 and 1986 were issued jointly to petitioner and Mrs. Ertz. Petitioner and Mrs. Ertz jointly filed their Federal income tax returns for all relevant years. Petitioner and Mrs. Ertz also jointly filed the Form 1045, Application for Tentative Refund. However, the notice of determination was addressed only to petitioner. To avoid confusion, we will address the schedules, returns, and forms, as if they were issued only to petitioner.

overpayments of tax and received refunds of $14,517 and $10,674, respectively.

Petitioner carried back unused investment credits derived from his investment in DGE 85-5 to 1982, 1983, and 1984 and received refunds of $11,556, $5,059, and $7,637, respectively. Petitioner also carried forward unused investment credits to 1987 and 1988 of $2,914 and $312, respectively. Using those investment credits, deductions related to DGE 85-5, and other deductions, petitioner reported overpayments and received refunds of $7,045 and $1,306.

On June 13, 1989, respondent issued DGE 85-5 a notice of final partnership administrative adjustment (FPAA) for its 1985 tax year. On October 1, 1990, respondent issued DGE 85-5 an FPAA for its 1986 tax year. Respondent disallowed all losses and cost bases in "property eligible for investment credit" claimed by DGE 85-5 and asserted that additions to tax under sections 6653(a)(1) and (2), 6659, and 6661 and increased interest under section 6621(c) applied to the individual partners.

Hoyt, as the tax matters partner for DGE 85-5, filed petitions with the Tax Court in response to the FPAAs.[6] DGE 85-5's cases were consolidated with other Hoyt partnerships' cases in 23 separate docket numbers. See Shorthorn Genetic Engg. 1982-

---

[6] The petition in response to the 1985 FPAA was filed at docket No. 22070-89, and the petition in response to the 1986 FPAA was filed at docket No. 28577-90.

2, Ltd. v. Commissioner, T.C. Memo. 1996-515. The parties stipulated all issues except whether the partnership items were allocated to the partners in accordance with a settlement agreement dated May 20, 1993, between Hoyt and respondent's Sacramento, California, Appeals Office. Id. The Court determined that respondent's allocation method was appropriate and entered an order and decision in each docket number. Id. Each order and decision reflected the determination of various partnership items and stated in pertinent part:

> That the additions to tax under I.R.C. §§6653(a)(1), 6653(a)(2), 6659, and 6661, and the additional interest under I.R.C. §6621(c), formerly §6621(d), which were all mentioned in the Notice of Final Partnership Administrative Adjustment * * * are affected items as defined in I.R.C. §6231(a)(5) that require factual determinations to be made at the partner level, and are not within the Court's jurisdiction in this case.

On March 12, 1998, respondent sent petitioner a Form 4549A-CG, Income Tax Examination Changes, reflecting changes made for petitioner's 1982 through 1988 tax years resulting from the orders and decisions entered pursuant to Shorthorn Genetic Engg. Respondent determined deficiencies in petitioner's income tax of $11,556, $5,059, $7,367, $6,856, $6,106, $2,914, and $312, respectively. Respondent did not assert any penalties or additions to tax but determined that petitioner was liable for additional interest on tax-motivated transactions under section 6621(c) (section 6621(c) interest). Because no penalties or additions to tax were asserted, and because respondent assessed

the deficiencies in tax and the section 6621(c) interest as a computational adjustment, no notices of deficiency were issued.

On March 7, 2002, respondent issued petitioner a Final Notice--Notice of Intent to Levy and Notice of Your Right to a Hearing (final notice). In addition to petitioner's outstanding tax liabilities for 1982 through 1988, the final notice included an unpaid amount of $59 from 1993 and interest of $164 and $692 for 1993 and 1997, respectively.[7] The final notice indicated that, as of April 6, 2002, petitioner owed $213,258, inclusive of interest.

On March 18, 2002, petitioner submitted a Form 12153, Request for a Collection Due Process Hearing. Petitioner indicated that he would be pursuing an offer-in-compromise based alternatively on doubt as to collectibility with special circumstances or effective tax administration. Petitioner also argued that, because he had not had a previous opportunity to dispute the imposition of section 6621(c) interest, it was a proper subject for review in the section 6330 hearing.

Petitioner's case was assigned to Settlement Officer Linda Cochran (Ms. Cochran). Ms. Cochran initially scheduled a telephone section 6330 hearing on April 6, 2004. Petitioner's representative, Terri A. Merriam (Ms. Merriam), requested that

---

[7] Details regarding petitioner's 1993 and 1997 tax years are not in the record.

the hearing be delayed because of the number of Hoyt-related cases her law firm was handling. Ms. Cochran did not change the date of the hearing, but she extended petitioner's deadline for producing information to be considered to May 14, 2004.

On May 14, 2004, petitioner submitted to Ms. Cochran a Form 656, Offer in Compromise, a Form 433-A, Collection Information Statement for Wage Earners and Self-Employed Individuals, one letter explaining the offer amount and other payment considerations, and three letters setting out in detail petitioner's position regarding the offer-in-compromise. Petitioner's letters included several exhibits.

The Form 656 indicated that petitioner was seeking an offer-in-compromise based on either doubt as to collectibility with special circumstances or effective tax administration. Petitioner offered to pay $157,824 to compromise his outstanding tax liabilities for 1982 through 1996. On July 21, 2004, petitioner submitted an "Amendment of Form 656", seeking to include his 2001 tax year as part of the offer-in-compromise.[8]

---

[8] While the notice of determination covered petitioner's 1997 tax year, it does not appear that he sought to include 1997 in his offer-in-compromise.

On the Form 433-A, petitioner listed the following assets:

| Asset | Current Balance/Value | Loan Balance |
|---|---|---|
| Checking accounts | $2,515 | n/a |
| Savings accounts | 3,031 | n/a |
| Fidelity 401(k) | 178,483 | -0- |
| Other stock | 7,597 | -0- |
| Cash on hand | 200 | n/a |
| 1990 Toyota 4-Runner | 1,350 | -0- |
| 1981 Toyota Pickup | De minimis | -0- |
| 1993 Yamaha 225 | 950 | -0- |
| House | 140,000 | $37,145 |
| Total | 334,126 | 37,145 |

The reported value of the Fidelity section 401(k) plan account reflected only 70 percent of its then-current value. The reported value of the house reflected an 80-percent "quick-sale" value.

Petitioner reported gross monthly income of $3,929, representing petitioner's and Mrs. Ertz's pension and Social Security payments. Petitioner also reported the following monthly living expenses:

| Expense item | Monthly expense |
|---|---|
| Food, clothing, misc. | $904 |
| Housing and utilities | 1,254 |
| Transportation | 402 |
| Health care | 511 |
| Taxes (income and FICA) | 654 |
| Life insurance | 31 |
| Other expenses | 400 |
| Total | 4,156 |

The other expenses represented attorney's fees petitioner paid to Ms. Merriam's law firm in connection with the present litigation.

In the letter explaining the offer amount, petitioner stated that he was offering to pay $157,824 "for all Hoyt related years to be paid in one lump sum payment. * * * This offer fully pays the estimated tax liability, but not interest." Petitioner indicated that he has suffered four strokes, was forced to retire early, must visit the doctor twice a month to have his blood pressure checked, and must take several medications.

The letter also included a "retirement analysis" outlining an estimated $44,000 needed for home repairs and the purchase of a new car and the likelihood of increased housing and medical costs on account of the aging of petitioner.

In the remaining three letters, petitioner alleged that he was a victim of Hoyt's fraud, asserted various arguments

regarding the appropriateness of an offer-in-compromise, and argued that he was not liable for section 6621(c) interest.

On May 21, 2004, petitioner submitted another letter to Ms. Cochran, which included 42 exhibits not provided with the May 14, 2004, letters.

On September 23, 2004, respondent issued petitioner a notice of determination. In evaluating petitioner's offer-in-compromise, respondent made the following changes to the values of assets petitioner reported on the Form 433-A: (1) Respondent determined that the value of the section 401(k) plan account was $254,976 instead of $178,483 (the 70-percent value petitioner reported) and reduced the estimate of petitioner's net realizable equity by $47,347 to $207,629 to reflect estimated tax and penalties; (2) respondent determined that the house was worth $240,000 instead of $140,000 (the 80-percent quick-sale value petitioner reported) and reduced the value by the $37,145 outstanding on the mortgage, for net realizable equity of $229,060; (3) respondent determined that the 1981 Toyota Pickup had a quick-sale value of $80 instead of de minimis; and (4) respondent considered only the 1993 Yamaha 225's quick-sale value of $760 instead of the fair market value of $950 petitioner reported. Respondent concluded that petitioner had a total net realizable equity of $452,714.

Respondent accepted the gross monthly income and expenses petitioner reported on the Form 433-A, but with one exception. Respondent reduced the housing and utilities expense to $1,102, resulting in total monthly expenses of $4,004 instead of $4,156. Because $4,004 exceeded petitioner's gross monthly income of $3,929, respondent determined that petitioner did not have future disposable income that could fund an offer-in-compromise. However, respondent determined that petitioner's mortgage would be paid off in 4 years. Petitioner's monthly mortgage payment was $795, and because his current monthly expenses exceeded his income by $75, respondent determined that petitioner would have $720 a month to fund the offer-in-compromise after the mortgage was paid off. Respondent concluded that over the remaining collection period there was an "amount collectible from retired debt" of $51,120. Regarding the possible future increase in expenses outlined in petitioner's letters, respondent determined that these were "general projections from the taxpayers' representative and may never, in fact, be incurred" and thus did not take these into account. Respondent concluded that petitioner had the ability to pay $503,834 ($452,714 + $51,120).

Because petitioner had the ability to pay substantially more than the $157,824 offered, respondent rejected petitioner's offer-in-compromise based on doubt as to collectibility with special circumstances. Respondent also rejected petitioner's

effective tax administration offer-in-compromise based on economic hardship because he had the ability to pay his tax liability in full.  Finally, respondent rejected petitioner's effective tax administration offer-in-compromise based on public policy or equity grounds because the case "fails to meet the criteria for such consideration".

Regarding section 6621(c) interest, respondent determined that petitioner "has not established why [tax-motivated interest] was improperly assessed".

Respondent concluded that petitioner did not offer an acceptable collection alternative, that all requirements of law and administrative procedure had been met, and that respondent could proceed with the proposed collection action.

In response to the notice of determination, petitioner filed his petition with this Court on October 25, 2004.

OPINION

I.   Petitioner's Offer-in-Compromise

Section 7122(a) provides that "The Secretary may compromise any civil * * * case arising under the internal revenue laws". Whether to accept an offer-in-compromise is left to the Secretary's discretion.  Fargo v. Commissioner, 447 F.3d 706, 712 (9th Cir. 2006), affg. T.C. Memo. 2004-13; sec. 301.7122-1(c)(1), Proced. & Admin. Regs.

The regulations under section 7122 set forth three grounds for the compromise of a tax liability: (1) Doubt as to liability; (2) doubt as to collectibility; or (3) promotion of effective tax administration. Sec. 301.7122-1(b), Proced. & Admin. Regs. Doubt as to liability is not at issue in this case.[9]

The Secretary may compromise a tax liability based on doubt as to collectibility where the taxpayer's assets and income are less than the full amount of the assessed liability. Sec. 301.7122-1(b)(2), Proced. & Admin. Regs. Generally, under the Commissioner's administrative pronouncements, an offer-in-compromise based on doubt as to collectibility will be acceptable only if it reflects the taxpayer's reasonable collection potential. Rev. Proc. 2003-71, sec. 4.02(2), 2003-2 C.B. 517, 517. In some cases, the Commissioner will accept an offer-in-compromise of less than the reasonable collection potential if there are "special circumstances". Id. Special circumstances are: (1) Circumstances demonstrating that the taxpayer would suffer economic hardship if the IRS were to collect from him an amount equal to the reasonable collection potential; or (2) circumstances justifying acceptance of an amount less than the

---

[9] While petitioner disputes his liability for sec. 6621(c) interest, he did not raise doubt as to liability as a grounds for compromise, neither on his Form 656 nor during the sec. 6330 hearing.

reasonable collection potential due to public policy or equity considerations. See Internal Revenue Manual (IRM) sec. 5.8.4.3(4). However, in accordance with the Commissioner's guidelines, an offer-in-compromise based on doubt as to collectibility with special circumstances should not be accepted, even when economic hardship or considerations of public policy or equity circumstances are identified, if the taxpayer does not offer an acceptable amount. See IRM sec. 5.8.11.2.1(11) and .2(12).

The Secretary may also compromise a tax liability on the ground of effective tax administration when: (1) Collection of the full liability will create economic hardship; or (2) exceptional circumstances exist such that collection of the full liability would undermine public confidence that the tax laws are being administered in a fair and equitable manner; and (3) compromise of the liability would not undermine compliance by taxpayers with the tax laws. Sec. 301.7122-1(b)(3), Proced. & Admin. Regs.

Petitioner proposed an offer-in-compromise based alternatively on doubt as to collectibility with special circumstances or effective tax administration, offering to pay $157,824 to compromise his outstanding tax liabilities. Petitioner argued that collection of the full liability would create economic hardship and would undermine public confidence

that the tax laws are being administered in a fair and equitable manner.  Respondent determined that petitioner's reasonable collection potential was $503,834 and that petitioner's offer-in-compromise did not meet the criteria for an offer-in-compromise based on either doubt as to collectibility with special circumstances or effective tax administration.

Insofar as the underlying tax liability is not at issue, our review under section 6330 is for abuse of discretion.[10]  See Sego v. Commissioner, 114 T.C. 604, 610 (2000); Goza v. Commissioner, 114. T.C. 176, 182 (2000).  This standard does not ask us to decide whether in our own opinion petitioner's offer-in-compromise should have been accepted, but whether respondent's rejection of the offer-in-compromise was arbitrary, capricious, or without sound basis in fact or law.  Woodral v. Commissioner, 112 T.C. 19, 23 (1999); Keller v. Commissioner, T.C. Memo. 2006-166; Fowler v. Commissioner, T.C. Memo. 2004-163.  Because the same factors are taken into account in evaluating offers-in-compromise based on doubt as to collectibility with special circumstances and on effective tax administration (economic hardship or public policy and equity), we consider petitioner's separate grounds for his offer-in-compromise together.  See

_____

[10]  With the exception of his liability for sec. 6621(c) interest, petitioner does not argue that his underlying tax liability is at issue.  The sec. 6621(c) interest issue is discussed infra.

Murphy v. Commissioner, 125 T.C. 301, 309, 320 n.10 (2005), affd. 469 F.3d 27 (1st Cir. 2006); Barnes v. Commissioner, T.C. Memo. 2006-150.

A.    Economic Hardship

Petitioner asserts that Ms. Cochran abused her discretion by rejecting his offer-in-compromise because "There is no indication that SO Cochran gave any substantive consideration to Petitioner's demonstrated special circumstances or that he would experience a hardship if required to make a full-payment." In support of this assertion, petitioner argues: (1) Ms. Cochran failed to discuss petitioner's special circumstances in the notice of determination; (2) Ms. Cochran failed to consider that petitioner's expenses are currently greater than his income and that those expenses will likely increase; and (3) Ms. Cochran improperly valued petitioner's house.

Section 301.6343-1(b)(4)(i), Proced. & Admin. Regs., states that economic hardship occurs when a taxpayer is "unable to pay his or her reasonable basic living expenses." Section 301.7122-1(c)(3), Proced. & Admin. Regs., sets forth factors to consider in evaluating whether collection of a tax liability would cause economic hardship, as well as some examples. One of the examples involves a taxpayer who provides full-time care to a dependent child with a serious long-term illness. A second example involves a taxpayer who would lack adequate means to pay his

basic living expenses were his only asset to be liquidated.  A third example involves a disabled taxpayer who has a fixed income and a modest home specially equipped to accommodate his disability, and who is unable to borrow against his home because of his disability.  See sec. 301.7122-1(c)(3)(iii), Examples (1), (2), and (3), Proced. & Admin. Regs.  None of these examples bears any resemblance to this case, but instead they "describe more dire circumstances".  Speltz v. Commissioner, 454 F.3d 782, 786 (8th Cir. 2006), affg. 124 T.C. 165 (2005); see also Barnes v. Commissioner, supra.  Nevertheless, we will address petitioner's arguments.

    1.    Discussion of Special Circumstances in the Notice of Determination

Petitioner argues that Ms. Cochran failed "to follow proper procedure by [not] discussing Petitioner's special circumstances, what equity was considered in relation to his special circumstances, and how the special circumstances affected her determination of his ability to pay."  Petitioner infers that, because the special circumstances were not discussed in detail in the notice of determination, Ms. Cochran failed to adequately take petitioner's circumstances into consideration.

We do not believe that Appeals must specifically list in the notice of determination every single fact that it considered in arriving at the determination.  See Barnes v. Commissioner, supra.  This is especially true in a case such as this, where

petitioner provided Ms. Cochran with multiple letters and hundreds of pages of exhibits. As discussed below, Ms. Cochran considered all of the arguments and information presented to her. Given the amount of information, it would be unreasonable to put the burden on Ms. Cochran to specifically address in the notice of determination every single asserted fact, circumstance, and argument presented. The fact that all of the information was not specifically addressed in the notice of determination does not indicate an abuse of discretion.

2.   Petitioner's Income and Future Expenses

Petitioner argues that Ms. Cochran failed to adequately consider his and Mrs. Ertz's age, health, and retirement status, the likelihood of future increases in medical and housing costs, and the need to retain retirement assets to cover the difference between income and expenses. Petitioner's argument is not supported by the record.

On his Form 433-A, petitioner reported monthly medical expenses of $511. Ms. Cochran accepted that amount without reservation. Ms. Cochran also determined that petitioner and Mrs. Ertz were unable to obtain employment because of their age and medical condition. In determining whether petitioner could fund the offer-in-compromise with future income, Ms. Cochran used only the monthly pension income reported on the Form 433-A. Ms. Cochran determined that petitioner's monthly expenses exceeded

his income and therefore concluded that petitioner could not fund the offer-in-compromise with future income until the mortgage on his home was paid off.[11]  Given her acceptance of the medical expenses as reported and her conclusion that petitioner would not have future income to fund the offer-in-compromise until the mortgage on his home was paid off, we reject petitioner's assertion that Ms. Cochran failed to consider petitioner's and Mrs. Ertz's age, health, retirement status, and current medical costs.

Petitioner's argument is also unavailing with regard to the likelihood of future increases in medical and housing costs. Petitioner did not inform Ms. Cochran with any specificity that he would have to pay a greater amount of unreimbursed medical expenses in the future, or that his housing expenses would increase.  Instead, he made general assertions about the increase of medical costs as people age and about the need for some seniors to seek in-home care or nursing home care or to make their house handicapped accessible.

As reflected in the notice of determination, Ms. Cochran took into consideration the information petitioner presented but

---

[11]  While Ms. Cochran determined that petitioner could not otherwise fund the offer-in-compromise with future income, she determined that there was an "amount collectible from retired debt".  Because petitioner's mortgage would be paid off within 4 years, Ms. Cochran determined that the amount of the monthly mortgage payment, less the deficit between income and expenses, could then be applied to petitioner's outstanding tax liability.

concluded that "these possible future expenses are general projections from the taxpayers' representative and may never, in fact, be incurred. The present offer, therefore, must be considered within the framework of present facts." Given the information presented to her, it was not arbitrary or capricious for Ms. Cochran to ignore these speculative future costs in making her final determination.

Petitioner also asserts that Ms. Cochran abused her discretion by using the value of petitioner's section 401(k) plan account in her calculation of his reasonable collection potential. Petitioner argues that he must retain the section 401(k) plan account to pay future increases in expenses because his income is insufficient to cover even his current expenses. As discussed above, petitioner's assertions regarding future expenses are speculative and unsupported, and it was not arbitrary or capricious for Ms. Cochran to ignore such costs. However, even assuming arguendo that petitioner's expenses will increase, we would not find that Ms. Cochran abused her discretion by factoring in petitioner's section 401(k) plan account to determine his reasonable collection potential.

While it is uncontested that petitioner's expenses currently exceed his income, petitioner ignores the fact that some of the expenses allowed by Ms. Cochran are only temporary. Ms. Cochran determined that petitioner's mortgage would be paid off within 4

years, a fact petitioner does not dispute.  After the mortgage is paid off, petitioner's monthly expenses will decrease by $795.  Additionally, Ms. Cochran allowed petitioner's "other expenses" of $400 per month, which represented payments petitioner made to Ms. Merriam's law firm relating to the present litigation.  There is no indication that this expense will continue once the present litigation has been concluded.  Once these costs cease, petitioner will have an additional $1,195 per month to pay any increased expenses.

3.  Value of Petitioner's House

Petitioner argues that Ms. Cochran improperly valued his house.  Petitioner also argues that Ms. Cochran failed to take into consideration the need for repairs.  Petitioner's arguments are not persuasive.

On his Form 433-A, petitioner reported that the estimated fair market value of his house was $175,000, with an 80-percent quick-sale value of $140,000.  Petitioner's estimate was based on "sales of nearby homes".  In one of the May 14, 2004, letters, petitioner listed a variety of problems with the house.  Petitioner did not provide any supporting documentation regarding the need for repairs but instead invited Ms. Cochran to view the house in person.  Other than a broad statement that he needed $44,000 to pay necessary expenses, which also included the

purchase of a new car, petitioner did not provide estimated costs of the repairs.

Because petitioner did not provide supporting documentation regarding the condition or the value of the house, Ms. Cochran did not accept petitioner's reported value. Instead, she determined a value of $240,000 on the basis of recent sales of comparable houses.

Petitioner takes exception to Ms. Cochran's use of sales of comparable houses and asserts that she should have hired a professional valuation expert. While an expert might have provided the most reliable opinion of value, we do not believe that Ms. Cochran's failure to seek such an opinion was an abuse of discretion. Notably, it appears that petitioner's estimated value was based on his representative's comparison of the house with similar houses recently sold and not on an expert's opinion. It was not arbitrary or capricious for Ms. Cochran to value the house in the same manner.

Petitioner believes that, despite the lack of supporting documentation, Ms. Cochran abused her discretion by not factoring in the cost of repairs. Petitioner asserts that, if Ms. Cochran questioned petitioner's representations, she could have requested more information or accepted petitioner's invitation to view the house in person. Given the voluminous information provided to Ms. Cochran, we do not believe that she was under an obligation

to request more information or to view the house in person. The burden was on petitioner to establish that he was entitled to an offer-in-compromise. Petitioner cannot shift this burden by simply inviting Ms. Cochran to request more information or to view the house in person.

Additionally, even assuming arguendo that petitioner's house valuation should have been accepted, we would not find that Ms. Cochran abused her discretion in rejecting petitioner's offer-in-compromise based on economic hardship. On his Form 433-A, petitioner reported assets with a total value of $297,742. However, petitioner offered to pay only $157,824 to compromise his outstanding tax liabilities. Respondent may accept an offer-in-compromise based on doubt as to collectibility with special circumstances or on effective tax administration even if the offer is less than petitioner's reasonable collection potential. However, given all other considerations discussed herein, we do not believe that Ms. Cochran abused her discretion by rejecting an offer-in-compromise that bore no relationship to petitioner's ability to pay.

### 4. Encouraging Voluntary Compliance With the Tax Laws

We are also mindful that any decision by Ms. Cochran to accept petitioner's offer-in-compromise based on doubt as to collectibility with special circumstances or effective tax administration based on economic hardship must be viewed against

the backdrop of section 301.7122-1(b)(3)(iii), Proced. & Admin.
Regs.[12]  See Barnes v. Commissioner, T.C. Memo. 2006-150.  That
section requires that Ms. Cochran deny petitioner's offer-in-
compromise if its acceptance would undermine voluntary compliance
with tax laws by taxpayers in general.  Thus, even if we were to
assume arguendo that petitioner would suffer economic hardship, a
finding that we decline to make, we would not find that Ms.
Cochran's rejection of petitioner's offer-in-compromise was an
abuse of discretion.  As discussed below (in our discussion of
petitioner's "equitable facts" argument), we conclude that
acceptance of petitioner's offer-in-compromise would undermine
voluntary compliance with tax laws by taxpayers in general.

B.    Public Policy and Equity Considerations

Petitioner asserts that "There are so many unique and
equitable facts in this case that this case is an exceptional
circumstance" and respondent abused his discretion by not
accepting those facts as grounds for an offer-in-compromise.  In
support of his assertion, petitioner argues:  (1) The
longstanding nature of this case justifies acceptance of the
offer-in-compromise; (2) respondent's reliance on an example in

---

[12]  The prospect that acceptance of an offer-in-compromise
will undermine compliance with the tax laws militates against its
acceptance whether the offer-in-compromise is predicated on
promotion of effective tax administration or on doubt as to
collectibility with special circumstances.  See Rev. Proc. 2003-
71, 2003-2 C.B. 517; IRM sec. 5.8.11.2.3; see also Barnes v.
Commissioner, T.C. Memo. 2006-150.

the IRM was improper; and (3) respondent failed to consider petitioner's other "equitable facts".

### 1. Longstanding Case

Petitioner asserts that the legislative history requires respondent to resolve "longstanding" cases by forgiving penalties and interest which would otherwise apply. Petitioner argues that, because this is a longstanding case, respondent abused his discretion by failing to accept his offer-in-compromise.

Petitioner's argument is essentially the same one considered and rejected by the Court of Appeals for the Ninth Circuit in Fargo v. Commissioner, 447 F.3d at 711-712. See also Keller v. Commissioner, T.C. Memo. 2006-166; Barnes v. Commissioner, supra. We reject petitioner's argument for the same reasons stated by the Court of Appeals. We add that petitioner's counsel participated in the appeal in Fargo as counsel for the amici. On brief, petitioner suggests that the Court of Appeals knowingly wrote its opinion in Fargo in such a way as to distinguish that case from the cases of counsel's similarly situated clients (e.g., petitioner), and to otherwise allow those clients' liabilities for penalties and interest to be forgiven. We do not read the opinion of the Court of Appeals in Fargo to support that conclusion. See Keller v. Commissioner, supra; Barnes v. Commissioner, supra.

Respondent's rejection of petitioner's longstanding case argument was not arbitrary or capricious.

2.  The IRM Example

Petitioner argues that respondent erred when he determined that petitioner was not entitled to relief based on the second example in IRM section 5.8.11.2.2(3).  Petitioner asserts that many of the facts in this case were not present in the example, and, therefore, any reliance on the example was misplaced.  Petitioner's argument is not persuasive.

IRM section 5.8.11.2.2(3) discusses effective tax administration offers-in-compromise based on equity and public policy grounds and states in the second example:

> In 1983, the taxpayer invested in a nationally marketed partnership which promised the taxpayer tax benefits far exceeding the amount of the investment. Immediately upon investing, the taxpayer claimed investment tax credits that significantly reduced or eliminated the tax liabilities for the years 1981 through 1983.  In 1984, the IRS opened an audit of the partnership under the provisions of the Tax Equity and Fiscal Responsibility Act of 1982 (TEFRA).  After issuance of the Final Partnership Administrative Adjustment (FPAA), but prior to any proceedings in Tax Court, the IRS made a global settlement offer in which it offered to concede a substantial portion of the interest and penalties that could be expected to be assessed if the IRS's determinations were upheld by the court.  The taxpayer rejected the settlement offer. After several years of litigation, the partnership level proceeding eventually ended in Tax Court decisions upholding the vast majority of the deficiencies asserted in the FPAA on the grounds that the partnership's activities lacked economic substance. The taxpayer has now offered to compromise all the penalties and interest on terms more favorable than those contained in the prior settlement offer, arguing

that TEFRA is unfair and that the liabilities accrued in large part due to the actions of the Tax Matters Partner (TMP) during the audit and litigation. Neither the operation of the TEFRA rules nor the TMP's actions on behalf of the taxpayer provide grounds to compromise under the equity provision of paragraph (b)(4)(i)(B) of this section. Compromise on those grounds would undermine the purpose of both the penalty and interest provisions at issue and the consistent settlement principles of TEFRA. * * *

1 Administration, Internal Revenue Manual (CCH), sec. 5.8.11.2.2(3), at 16,378. Ms. Cochran determined that petitioner's case is similar to the example:

Some of the most obvious similarities--the year, pretty old, and that seems to match or correlate to the taxpayer's circumstances, that this was a TEFRA proceeding, that an FPAA was issued, * * * They rejected a settlement offer that had been previous-- that the IRS had previously made. The taxpayers entered litigation for a number of years. And--and that there were actions of the TMP that the taxpayer was raising issues of tax-motivated--TMP's actions as one of his arguments.

We agree with respondent that the example presents similar circumstances to those in petitioner's case. Ms. Cochran's testimony accurately reflects those similarities.

Petitioner is correct in asserting that not all the facts in his case are present in the example. However, it is unreasonable to expect that facts in an example be identical to facts of a particular case before the example can be relied upon. The IRM example was only one of many factors respondent considered. Given the similarities to petitioner's case, respondent's reliance on that example was not arbitrary or capricious.

3.  Petitioner's Other "Equitable Facts"

Petitioner argues that respondent abused his discretion by failing to consider the other "equitable facts" of this case. Petitioner's "equitable facts" include reference to:  (1) Petitioner's reliance on Bales v. Commissioner, T.C. Memo. 1989-568;[13] (2) petitioner's reliance on Hoyt's enrolled agent status; (3) Hoyt's criminal conviction; (4) Hoyt's fraud on petitioner; and (5) other letters and cases.  The basic thrust of petitioner's argument is that he was defrauded by Hoyt and that, if he were held responsible for penalties and interest incurred as a result of his investment in a tax shelter, it would be inequitable and against public policy.  Petitioner's argument is not persuasive.

While the regulations do not set forth a specific standard for evaluating an offer-in-compromise based on claims of public policy or equity, the regulations contain two examples.  See sec.

---

[13]  Bales v. Commissioner, T.C. Memo. 1989-568, involved deficiencies determined against various investors in several Hoyt partnerships.  This Court found in favor of the investors on several issues, stating that "the transaction in issue should be respected for Federal income tax purposes."  Taxpayers in many Hoyt-related cases have used Bales as the basis for a reasonable cause defense to accuracy-related penalties.  This argument has been uniformly rejected by this Court and by the Courts of Appeals for the Sixth and Tenth Circuits.  See, e.g., Mortensen v. Commissioner, 440 F.3d 375, 390-391 (6th Cir. 2006), affg. T.C. Memo. 2004-279; Van Scoten v. Commissioner, 439 F.3d 1243, 1254-1256 (10th Cir. 2006), affg. T.C. Memo. 2004-275; Sanders v. Commissioner, T.C. Memo. 2005-163; Hansen v. Commissioner, T.C. Memo. 2004-269.

301.7122-1(c)(3)(iv), Examples (1) and (2), Proced. & Admin. Regs.  The first example describes a taxpayer who is seriously ill and unable to file income tax returns for several years.  The second example describes a taxpayer who received erroneous advice from the Commissioner as to the tax effect of the taxpayer's actions.  Neither example bears any resemblance to this case.  Unlike the exceptional circumstances exemplified in the regulations, petitioner's situation is neither unique nor exceptional in that his situation mirrors those of numerous other taxpayers who claimed tax shelter deductions in the 1980s and 1990s.  See Keller v. Commissioner, T.C. Memo. 2006-166; Barnes v. Commissioner, T.C. Memo. 2006-150.

Of course, the examples in the regulations are not meant to be exhaustive, and petitioner has a more sympathetic case than the taxpayers in Fargo v. Commissioner, 447 F.3d at 714, for whom the Court of Appeals for the Ninth Circuit noted that "no evidence was presented to suggest that Taxpayers were the subject of fraud or deception".  Such considerations, however, have not kept this Court from finding investors in the Hoyt tax shelters to be liable for penalties and interest, nor have they prevented the Courts of Appeals for the Sixth and Tenth Circuits from affirming our decisions to that effect.  See Mortensen v. Commissioner, 440 F.3d 375 (6th Cir. 2006), affg. T.C. Memo.

2004-279; <u>Van Scoten v. Commissioner</u>, 439 F.3d 1243 (10th Cir. 2006), affg. T.C. Memo. 2004-275.

Ms. Cochran testified that she considered all of Ms. Merriam's and petitioner's assertions, including the numerous letters and exhibits. Nevertheless, Ms. Cochran determined that petitioner did not qualify for an offer-in-compromise.

The mere fact that petitioner's "equitable facts" did not persuade respondent to accept petitioner's offer-in-compromise does not mean that those assertions were not considered. The notice of determination and Ms. Cochran's testimony demonstrate respondent's clear understanding and careful consideration of the facts and circumstances of petitioner's case. We find that respondent's determination that the "equitable facts" did not justify acceptance of petitioner's offer-in-compromise was not arbitrary or capricious, and thus it was not an abuse of discretion.

We also find that compromising petitioner's case on grounds of public policy or equity would not enhance voluntary compliance by other taxpayers. A compromise on that basis would place the Government in the unenviable role of an insurer against poor business decisions by taxpayers, reducing the incentive for taxpayers to investigate thoroughly the consequences of transactions into which they enter. It would be particularly inappropriate for the Government to play that role here, where

the transaction at issue is participation in a tax shelter. Reducing the risks of participating in tax shelters would encourage more taxpayers to run those risks, thus undermining rather than enhancing compliance with the tax laws. See Barnes v. Commissioner, supra.

C.    Petitioner's Other Arguments

1.    Compromise of Penalties and Interest in an Effective Tax Administration Offer-in-Compromise

Petitioner advances a number of arguments focusing on his assertion that respondent determined that penalties and interest could not be compromised in an effective tax administration offer-in-compromise.  Petitioner argues that such a determination is contrary to legislative history and is therefore an abuse of discretion.  These arguments are not persuasive.

The regulations under section 7122 provide that "If the Secretary determines that there are grounds for compromise under this section, the Secretary may, at the Secretary's discretion, compromise any civil * * * liability arising under the internal revenue laws".  Sec. 301.7122-1(a)(1), Proced. & Admin. Regs.  In other words, the Secretary may compromise a taxpayer's tax liability if he determines that grounds for a compromise exist. If the Secretary determines that grounds do not exist, the amount offered (or the way in which the offer is calculated) need not be considered.

Petitioner's arguments regarding the compromise of penalties and interest do not relate to whether there are grounds for a compromise. Instead, these arguments go to whether the amount petitioner offered to compromise his tax liability was acceptable. As addressed above, respondent's determination that the facts and circumstances of petitioner's case did not warrant acceptance of his offer-in-compromise was not arbitrary or capricious and was thus not an abuse of discretion. Because no grounds for compromise exist, we need not address whether respondent can or should compromise penalties and interest in an effective tax administration offer-in-compromise. See Keller v. Commissioner, supra.

2.   Information Sufficient for the Court To Review
     Respondent's Determination

Petitioner argues that respondent failed to provide the Court with sufficient information "so that this Court can conduct a thorough, probing, and in-depth review of respondent's determinations." Petitioner's argument is without merit.

Generally, a taxpayer bears the burden of proving the Commissioner's determinations incorrect. Rule 142(a)(1); Welch v. Helvering, 290 U.S. 111, 115 (1933).[14] The burden was on

---

[14] While sec. 7491 shifts the burden of proof and/or the burden of production to the Commissioner in certain circumstances, this section is not applicable in this case because respondent's examination of petitioner's returns did not commence after July 22, 1998. See Internal Revenue Service

(continued...)

petitioner to show that respondent abused his discretion.  The burden was not on respondent to provide enough information to show that he did not abuse his discretion.  Nevertheless, we find that we had more than sufficient information to review respondent's determination.

3.    Scheduling of the Section 6330 Hearing and Deadline for Submission of Documents

Petitioner argues that Ms. Cochran abused her discretion by not allowing his counsel additional time to prepare for the section 6330 hearing and to submit additional documentation.  Once the section 6330 hearing was scheduled, Ms. Cochran refused petitioner's request to delay the hearing.  However, Ms. Cochran did extend the deadline for submission of documents.

While petitioner wanted to delay the section 6330 hearing, he does not allege that he was unable to adequately prepare for the hearing.  Additionally, petitioner has not identified any documents or other information that he believes Ms. Cochran should have considered but that he was unable to produce because of the deadline for submission.  Given the thoroughness and the amount of information submitted, it is unclear why petitioner needed additional time.  We do not believe that Ms. Cochran

[14](...continued)
Restructuring and Reform Act of 1998, Pub. L. 105-206, sec. 3001(c), 112 Stat. 727.

abused her discretion by establishing a timeframe for the section 6330 hearing and the submission of documents.

4.   Efficient Collection Versus Intrusiveness

Petitioner argues that respondent failed to balance the need for efficient collection of taxes with the legitimate concern that the collection action be no more intrusive than necessary. See sec. 6330(c)(3)(C).  Petitioner's argument is not supported by the record.

Petitioner has an outstanding tax liability.  In his section 6330 hearing, petitioner proposed only an offer-in-compromise. Because no other collection alternatives were proposed, there were no less intrusive means for respondent to consider.  We find that respondent balanced the need for efficient collection of taxes with petitioner's legitimate concern that collection be no more intrusive than necessary.

II.  Interest on Tax-Motivated Transactions

Section 6621(c) applies an increased rate of interest on substantial underpayments of tax resulting from tax-motivated transactions.  For purposes of section 6621(c), a "substantial underpayment attributable to tax motivated transactions" means any underpayment of tax attributable to one or more tax-motivated transactions if the amount of the underpayment exceeds $1,000. Sec. 6621(c)(2).  Tax-motivated transactions include any valuation overstatements within the meaning of former section

6659(c) or any sham or fraudulent transaction.  Sec. 6621(c)(3)(A)(i), (v).

In the FPAAs issued to DGE 85-5 for 1985 and 1986, respondent asserted that the individual partners might be liable for section 6621(c) interest.  As reflected in the orders and decisions in Shorthorn Genetic Engg. 1982-2, Ltd. v. Commissioner, T.C. Memo. 1996-515, the Tax Court determined that it lacked jurisdiction over section 6621(c) interest at the partnership level because such interest was not a partnership item but an affected item.  The difference between partnership items and affected items and the impact this distinction has on our jurisdiction are discussed below.

Respondent issued petitioner a Form 4549A-CG, in which respondent determined that petitioner was liable for section 6621(c) interest.  Respondent did not issue a notice of deficiency because he treated the interest as a computational matter.

Petitioner has not previously had the opportunity to dispute his liability for section 6621(c) interest.  Therefore, we have jurisdiction under section 6330(d) to review petitioner's underlying tax liability as it relates to section 6621(c) interest.  See also sec. 6330(c)(2)(B).  We review the section 6621(c) interest issue de novo.  See Sego v. Commissioner, 114 T.C. 604, 610 (2000); Goza v. Commissioner, 114 T.C. 176, 181-182

(2000). However, River City Ranches #1 Ltd. v. Commissioner, 401 F.3d 1136 (9th Cir. 2005), affg. in part and revg. in part T.C. Memo. 2003-150, indicates that our jurisdiction to determine petitioner's liability for section 6621(c) interest in this partner-level proceeding may be limited.

A. Tax Court Jurisdiction Generally

The Tax Court is a court of limited jurisdiction, and we may exercise our jurisdiction only to the extent authorized by Congress. Sec. 7442; Moore v. Commissioner, 114 T.C. 171, 175 (2000); Naftel v. Commissioner, 85 T.C. 527, 529 (1985). Although neither party has contested our jurisdiction, jurisdiction may not be conferred upon the Court by agreement of the parties. See Clark v. Commissioner, 125 T.C. 108, 109 (2005); Neely v. Commissioner, 115 T.C. 287, 291 (2000); Naftel v. Commissioner, supra at 530. Whether the Court has jurisdiction to decide an issue is a matter that this Court or a Court of Appeals may decide at any time. Clark v. Commissioner, supra at 109; Raymond v. Commissioner, 119 T.C. 191, 193 (2002).

B. Partnership Items Versus Affected Items and the Court's Jurisdiction To Determine the Character of a Partnership's Transactions

Congress enacted the partnership audit and litigation procedures to provide a method to uniformly adjust items of partnership income, loss, deduction, or credit that would affect each partner. See Tax Equity and Fiscal Responsibility Act of

1982, Pub. L. 97-248, sec. 402(a), 96 Stat. 648.  The statute makes a distinction between partnership items and nonpartnership items, or "affected items".  The tax treatment of partnership items may be determined only in a partnership-level proceeding, while the tax treatment of affected items may only be determined in a partner-level proceeding.  See sec. 6221; Affiliated Equip. Leasing II v. Commissioner, 97 T.C. 575, 576 (1991); Sparks v. Commissioner, 87 T.C. 1279, 1284 (1986); Maxwell v. Commissioner, 87 T.C. 783, 789 (1986).  This Court has previously held that section 6621(c) interest is an affected item which may require findings of fact peculiar to a particular partner and as such cannot be determined in a partnership-level proceeding.[15]  See, e.g., Affiliated Equip. Leasing II v. Commissioner, supra at 578-579; N.C.F. Energy Partners v. Commissioner, 89 T.C. 741, 745-746 (1987).

In River City Ranches #1 Ltd. v. Commissioner, T.C. Memo. 2003-150, a partnership-level proceeding involving Hoyt sheep breeding partnerships, the taxpayers argued that the Tax Court has jurisdiction over section 6621(c) interest at the partnership

_____

[15]  The Taxpayer Relief Act of 1997 (TRA 1997), Pub. L. 105-34, sec. 1238(b)(1), 111 Stat. 1026, amended sec. 6226(f) and expanded this Court's jurisdiction in partnership-level proceedings to include the applicability of "any penalty, addition to tax, or additional amount" related to the adjustment of a partnership item.  This amendment to sec. 6226(f) is effective only for partnership taxable years ending after Aug. 5, 1997, and does not apply to the years at issue in the instant case.  TRA 1997 sec. 1238(c), 111 Stat. 1027.

level.  Citing <u>Affiliated Equip. Leasing II</u> and <u>N.C.F. Energy</u> <u>Partners</u>, the Tax Court concluded that it lacked jurisdiction to decide the applicability of section 6621(c) interest in a partnership-level proceeding.[16]

On appeal, the Court of Appeals for the Ninth Circuit reversed the Tax Court on the section 6621(c) interest issue. <u>River City Ranches #1 Ltd. v. Commissioner</u>, 401 F.3d at 1143-1144.  The Court of Appeals stated:

> A partnership's tax items, which determine the partners' taxes, are litigated in partnership proceedings--not in the individual partners' cases.  26 U.S.C. § 6221 * * *.
>
> <u>The nature of the partnerships' transactions</u> <u>[i.e., whether or not the transactions were tax</u> <u>motivated transactions] is a "partnership item"</u> * * *. As a "partnership item," the character of the partnerships' transactions is within the Tax Court's scope of review.
>
> The Tax Court erred in holding that it had no jurisdiction to make findings concerning the character of the partnerships' transactions, for purposes of the 26 U.S.C. § 6621 penalty-interest provisions. Accordingly, we remand for the court to make such findings.  [Emphasis added.]

Petitioner resided in Lodi, California, when he filed his petition, and, absent stipulation to the contrary, appeal of this case would be to the Court of Appeals for the Ninth Circuit.

---

[16]  Like the instant case, <u>River City Ranches #1 Ltd. v.</u> <u>Commissioner</u>, T.C. Memo. 2003-150, affd. in part and revd. in part 401 F.3d 1136 (9th Cir. 2005), involved tax years ending on or before Aug. 5, 1997.  Thus, the expanded jurisdiction under TRA 1997 did not apply.  See <u>supra</u> note 15; see also TRA 1997 sec. 1238(c).

Because the Court of Appeals for the Ninth Circuit has held that, for purposes of the section 6621 penalty interest provisions, the character of a partnership's transactions is a partnership item, we will treat the character of DGE 85-5's transactions as if it were a partnership item for purposes of determining our jurisdiction in this case. See id.; Golsen v. Commissioner, 54 T.C. 742, 757 (1970), affd. 445 F.2d 985 (10th Cir. 1971).

Both parties argue that in the light of River City Ranches #1 Ltd. v. Commissioner, 401 F.3d 1136 (9th Cir. 2005), section 6621(c) interest has both a partnership item component to be determined at the partnership level and affected item components to be determined at the partner level. The partnership item component is the character of the partnership's transactions; i.e., whether the transactions were tax motivated. See id. at 1143-1144. The affected item components are what amount of the partner's underpayment of tax is attributable to the partnership's tax-motivated transactions and whether that underpayment is substantial. See sec. 6621(c)(2).

The determination that DGE 85-5's transactions were tax motivated is a prerequisite to determining petitioner's liability for section 6621(c) interest. Essentially, the parties ask us to use the findings (or lack of findings) of the Tax Court in Shorthorn Genetic Engg. 1982-2, Ltd. v. Commissioner, T.C. Memo. 1996-515, to determine whether DGE 85-5's transactions were tax

motivated.  In the orders and decisions entered pursuant to
Shorthorn Genetic Engg., the Court explicitly stated that it was
not considering the section 6621(c) interest issue.  The opinion
and the orders and decisions cannot fairly be interpreted as
making findings or determinations regarding whether DGE 85-5's
transactions were tax motivated.[17]  As this case is appealable to
the Ninth Circuit, we defer to the Ninth Circuit's determination
that, for purposes of section 6621(c), the character of a
partnership's transactions is a partnership item to be determined
at the partnership level.  See River City Ranches #1 Ltd. v.
Commissioner, 401 F.3d at 1143-1144; see also Golsen v.
Commissioner, supra at 757.  Because this is a partner-level
case, we do not have jurisdiction to determine DGE 85-5's
partnership items, including whether its transactions were tax
motivated.  See sec. 6221; Sparks v. Commissioner, supra at 1284;
Maxwell v. Commissioner, supra at 789.  Therefore, we cannot
determine whether petitioner had substantial underpayments of tax
resulting from tax-motivated transactions and shall dismiss for
lack of jurisdiction petitioner's claim regarding section 6621(c)
interest.

_____

[17]  Neither party appealed the Tax Court's decision in
Shorthorn Genetic Engg. 1982-2, Ltd. v. Commissioner, T.C. Memo.
1996-515, and that decision is now final.

III. <u>Conclusion</u>

Petitioner has not shown that respondent's determination was arbitrary or capricious, or without sound basis in fact or law. For all of the above reasons, we hold that respondent's determination was not an abuse of discretion, and respondent may proceed with the proposed collection action.  Further, we hold that we do not have jurisdiction at the partner level to determine whether a partnership's transactions were tax-motivated transactions.

In reaching our holdings herein, we have considered all arguments made, and, to the extent not mentioned above, we find them to be moot, irrelevant, or without merit.

To reflect the foregoing,

<u>An appropriate order and decision will be entered</u>.