**Fenton GINGERICH, Eunice Gingerich, Seung C. Karl, Young Ho Karl, Choong H. Kim, Joung S. Kim, Albert Liebovich, Dorothy Liebovich, Carl V. Liebovich, Nellie D. Liebovich, Gregory A. Liebovich, Gail Liebovich, Joe Liebovich, Belle Liebovich, Larry J. Liebovich, Barbara J. Liebovich, Samuel D. Liebovich, Erna S. Liebovich, Eugene M. Rosol, Charles H. Scruggs, Dae–Sob Yoon and Moon K. Yoon, Plaintiffs–Appellants,**

v.

**UNITED STATES, Defendant–Appellee.**

**No. 03–5027.**

United States Court of Appeals,
Federal Circuit.

DECIDED: Dec. 2, 2003.

Before MICHEL, SCHALL, and GAJARSA, Circuit Judges.

GAJARSA, Circuit Judge.

Fenton and Eunice Gingerich, Seung and Young Ho Karl, Choong and Joung Kim, Eugene Rosol, Charles Scruggs, Dae–Sob and Moon Yoon, Albert and Dorothy Liebovich, Carl and Nellie Liebovich, Gregory and Gail Liebovich, Joe and Belle Liebovich, Larry and Barbara Liebovich, and Samuel and Erna Liebovich (collectively the "Appellants" or "Taxpayers") appeal from the Court of Federal Claims' decision on summary judgment that the Internal Revenue Service ("IRS") timely assessed the Taxpayers. *Gingerich v. United States*, 54 Fed. Cl. 222 (2002). Because there exist genuine questions of material fact concerning the appropriate date for purposes of the statute of limitations on the taxes paid by the Appellants, we *vacate* and *remand* for further proceedings.

## BACKGROUND

Appellants were direct and indirect partners of General Information Associates Partnership ("GIA") during the tax years 1983–1986. In April 1990, the IRS disallowed items of loss and deductions concerning GIA's equipment leasing activities in a Notice of Final Partnership Administrative Adjustment ("FPAA"). Represented by attorney Thomas Redding, the Taxpayers petitioned the Tax Court for readjustment of the taxes assessed.

In January 1991, Redding wrote to IRS attorneys William Stoddard and Bruce Wilpon to inquire about the possibility of settlement and to request a closing agreement to settle items not before the Tax Court, such as penalties and "phantom income." A closing agreement is used to cover items not before the Tax Court.

In response, Wilpon offered Taxpayers a settlement (the "IRS Offer") on the following terms:

1. For the first open year of each partners' investment, the investor will be allowed, to the extent of losses claimed that year, sixty (60) percent of his or her verified out of pocket cash investment in the partnership less the amount of any partnership losses previously allowed. The balance of the sixty percent, if any, is allowed in the immediately succeeding open taxable years until exhausted. For these purposes, the investors' cash investment consists of his or her initial payment made by check plus the principal paid on any recourse notes in favor of the partnership. Interest paid on any notes in favor of the partnership is not a partnership item and not part of the investors' cash investment. This interest may be deductible subject to the applicable limitations contained in section 163.

2. The Government will concede the applicability of the additions to tax under sections 6653, 6659 and 6661, if any.
3. The investors are required to concede the applicability of the increased rate of interest established under section 6621(c), formerly section 6621(d).
4. No other losses, investment interest expense or other deductions attributable to this partnership shall be allowed in any other year.
5. No income attributable to this partnership shall be reported in any other year except to the extent that an investor receives cash or other property with respect to his or her investment in this partnership.

A series of counteroffers by Redding, and corresponding rejections by the IRS, ensued. In an October 17, 1992 letter, the IRS confirmed the terms of the original offer, adding, "the current settlement offer includes the reversal of any gain reported in the later years of this investment." On October 22, 1992, the IRS demanded that Redding's clients accept or reject the IRS Offer before December 1, 1992.

On November 12, 1992, Linda Paine, an attorney who represented certain GIA partners other than Appellants, wrote to Wilpon and Stoddard, allegedly on behalf of herself, Redding, and Babcock Mac-Lean, an attorney for other GIA partners. In this letter, she informed the IRS that the attorneys would recommend acceptance of the IRS Offer on the express condition that a closing agreement be entered into regarding the reporting of partnership items not before the Tax Court. Paine enclosed a draft closing agreement.

Redding wrote separately to the IRS on November 13, 1992, requesting a time extension. Like Paine, Redding also addressed the need for a closing agreement in his November 13, 1992 correspondence, but only as to "all issues that are not partnership item issues and therefore are not before the Court in this proceeding." Redding clarified that he would ask his clients to accept the IRS Offer "[n]otwithstanding this request." Along with his letter, Redding attached a model acceptance form for his clients to sign in acceptance of the IRS Offer (the "Redding Acceptance Form"). He asked the IRS attorneys to approve the form, stating: "Will you please confirm by fax that a letter in this form received in your office within the time specified *would constitute a valid acceptance of the settlement?*" (Emphasis added).

The Redding Acceptance Form included *six* items, the first five substantially corresponding to the language of the IRS Offer and the sixth incorporating the additional term offered in the IRS's October 17, 1992 letter: "[a]ny gains reported in years subsequent to the initial investment year shall be reversed and not included in income."

On November 17, 1992, IRS attorney Wilpon responded to Redding's letter stating:

We have reviewed your letter dated November 13, 1992 and agree with your outline of the settlement terms set out in the Draft Acceptance Form. In addition, we agree to your request for an additional 30 days to solicit acceptance of the settlement. Attached is our anticipated closing agreement language. If you have any questions, please call me.

Wilpon included a closing agreement with his fax (the "IRS Closing Agreement").

Based on Wilpon's reply, Redding wrote Appellants and urged them to settle via submission of the Redding Acceptance Form. Redding also told Appellants that a separate closing agreement would be needed in the future to bind the IRS on items

not before the Tax Court, such as penalties or phantom income.

On December 18, 1992, Wilpon wrote to MacLean to inform him that the IRS could not process "settlements (e.g. closing agreements)" until a new Tax Matters Partner was chosen for GIA. Redding and Paine were not copied on this correspondence.

On December 30, 1992, Redding mailed a series of the Redding Acceptance Forms signed by the Appellants.[1]

On January 26, 1993, less than a month after the submission of the Redding Acceptance Forms, Wilpon wrote to Redding and stated *"[i]t should be understood that this settlement is subject to review and acceptance on behalf of the respondent."* (Emphasis added). On February 18, 1993, Wilpon again expressed a reservation to the settlement, writing in bold type that *"no settlement occurs until closing agreements are signed by your clients and countersigned by the appropriate Service representative."* (Emphasis in original). Redding challenged Wilpon in a telephone conversation and by letter, considering Wilpon's letter to be a repudiation of the IRS Offer. Wilpon dropped the challenge to the settlement, admitting in deposition testimony that he decided that the "fight will be for a later day" on the issue of when the settlement was effectuated.

On September 10, 1993, Redding submitted signed closing agreements to Wilpon on behalf of the Taxpayers, which were countersigned by the appropriate IRS representative on September 22, 1993.[2]

Between January 3, 1994 and August 8, 1994, the IRS assessed deficiencies against the Taxpayers as individuals. Under 26 U.S.C. § 6229(f) (2003), the IRS may assess a tax related to a partnership item as long as such assessment occurs within one "year after the date on which the items become nonpartnership items." A partnership item converts to a nonpartnership item on the date that the IRS "enters into a settlement agreement with the partner with respect to such items." 26 U.S.C. § 6231(b)(1)(C) (2003). The parties dispute the date upon which the statute of limitations began to run. The Taxpayers allege that the one-year limitations period began on the day that the Redding Acceptance Forms were submitted, December 30, 1992. The United States contends that the operative date was September 22, 1993, the date that closing agreements were countersigned by the IRS.

The Court of Federal Claims concluded that the parties agreed to a closing agreement to finalize the tax settlement. *Gingerich*, 54 Fed.Cl. at 228–29. The court thus determined that the date of signing of the closing agreements, September 22, 1993, was the proper date to begin the statute of limitations imposed by 26 U.S.C. § 6229(f). *Id.* at 227. Given that the assessments by the IRS were completed within one year of this date, the Court of Federal Claims granted summary judgment to the United States.

## DISCUSSION

### A. *Standard of Review*

This court reviews the decision of the Court of Federal Claims to grant summary judgment de novo. *Winstar Corp. v. United States*, 64 F.3d 1531, 1539 (Fed.Cir. 1995) (en banc); *Bailey, et al. v. United*

---

1. Appellant Rosol sent his Redding Acceptance Form directly to the IRS.

2. Appellant Rosol signed his closing agreement on February 10, 1993, and submitted it to the IRS, which countersigned on March 16, 1993.

*States,* 341 F.3d 1342, 1345 (Fed.Cir.2003). Thus, the court in its review must independently determine whether there is a genuine issue of material fact. *Id.*

B. *The Need for a Closing Agreement*

As contracts, tax settlements are governed by general principles of contract law. *Treaty Pines Inv. P'ship v. Commissioner,* 967 F.2d 206, 211 (5th Cir.1992). The formation of a contract requires mutual assent to essential terms. *Linear Tech. Corp. v. Micrel, Inc.,* 275 F.3d 1040, 1052 (Fed.Cir.2001); 17A Am.Jur.2d, Contracts, §§ 27–28 (2003). In accepting an offer, the offeree also cannot change, add to, or qualify the terms of the contract in any material respect. *Minneapolis & St. Louis. Ry. Co. v. Columbus Rolling–Mill Co.,* 119 U.S. 149, 151, 7 S.Ct. 168, 30 L.Ed. 376 (1886); 17A Am.Jur.2d, Contracts, § 65 (2003); *Gingerich,* 54 Fed. Cl. at 228 (citing 1 Arthur L. Corbin, *Contracts* § 3.32 (1993)).

Settlement of an issue before the Tax Court does not require any particular method or form and can be accomplished by letters of offer and acceptance between the IRS attorneys assigned to the case and the taxpayers. *Treaty Pines,* 967 F.2d at 212; *Cinema '84 v. Commissioner,* 294 F.3d 432, 442 (2nd Cir.2002). In contrast, settlement of items not before the Tax Court requires the execution of a Form 906 Closing Agreement signed by an appropriate senior IRS employee. 26 U.S.C. §§ 7121–22; *Treaty Pines,* 967 F.2d at 212.

In granting summary judgment to the United States, the Court of Federal Claims determined that Redding's clients and the IRS "clearly contemplated the need to execute a closing agreement to finalize the settlement." *Gingerich,* 54 Fed. Cl. at 229. Because that factual assertion is disputed and does not find con-

clusive support in the record, it cannot be resolved on summary judgment. Redding and Wilpon submitted conflicting affidavits concerning the requirement (or lack thereof) for a closing agreement. In addition, the correspondence between Redding and the IRS attorneys, especially Redding's November 13, 1992 letter and Wilpon's November 17, 1992 response, suggest that the Redding Acceptance Form could have been sufficient to accept the IRS Offer without further documentation. Viewed in the light most favorable to the Appellants, the evidence presents genuine issues of material fact that must be resolved by further proceedings rather than by summary judgment.

We therefore vacate the decision of the Court of Federal Claims and remand for further proceedings and specific findings concerning whether or not the parties required a closing agreement to effectuate the settlement of issues before the Tax Court. If the Court of Federal Claims concludes that a closing agreement was not required, the court should then determine if the Redding Acceptance Form constituted a valid acceptance of the IRS Offer despite the variations in terms between the two documents.

## CONCLUSION

Because the Appellant has raised genuine issues of material fact regarding the need for a closing agreement, we vacate the Court of Federal Claims' grant of summary judgment and remand for further proceedings consistent with this opinion.

## COSTS

Costs to Appellants.