Eunice **GINGERICH, Executor of the Estate of Fenton Gingerich, et al., Plaintiffs,**

v.

**UNITED STATES, Defendant.**

Nos. 98–533T, 98–5330T to 98–5350T.

United States Court of Federal Claims.

Aug. 24, 2007.

Teresa J. Womack of Redding & Associates, P.C., Houston, TX, for plaintiffs.

Benjamin C. King, Jr., Tax Division, United States Department of Justice, Washington, D.C., for defendants. With him on the briefs were Richard T. Morrison, Acting Assistant Attorney General, David Gustafson, Chief, and Mary M. Abate, Assistant Chief, Court of Federal Claims Section, Tax Division, United States Department of Justice, Washington, D.C.

## OPINION AND ORDER FOR FINAL JUDGMENT

LETTOW, Judge.

Settling the final judgment in these consolidated cases requires resolution of an issue of statutory construction that apparently is one of first impression. After conducting trial in these 22 consolidated cases, this court, in a prior decision, determined that the Internal Revenue Service ("IRS" or "government") did not assess the plaintiffs with additional tax within the time prescribed by Congress after a settlement was entered concerning a partnership item. *Gingerich v. United States*, 77 Fed.Cl. 231 (2007) ("*Gingerich III*"). By that decision, the court directed the parties to confer and submit a reckoning of the specific amounts of refunds due. Unable to agree, the parties submitted divergent computations of the proper amounts to be entered as part of the final judgment in these cases. Supplemental briefing was requested and received, and a hearing was held on August 10, 2007 to address the disputed issues. With this further decision, the additionally contested matters are resolved, and final judgment can be entered in these cases under Rules 54 and 58 of the Rules of the Court of Federal Claims ("RCFC").

### Background

The plaintiffs comprise certain former direct and indirect partners of the General Information Associates Partnership ("GIA"). *Gingerich III*, 77 Fed.Cl. at 232. The Internal Revenue Service ("IRS") conducted an examination of GIA's partnership returns for tax years 1983 through 1986 and, in April 1990, issued a notice of final partnership administrative adjustment ("FPAA") proposing changes to those returns. The plaintiffs, then represented by attorney Thomas Redding, challenged these adjustments in a partnership-level TEFRA proceeding before the Tax Court.

While the partnership case was pending before the Tax Court, counsel for the IRS offered a settlement to Mr. Redding's clients. *Gingerich III*, 77 Fed.Cl. at 241–43. Because the IRS's district counsel possessed settlement authority only over issues pending before the Tax Court and the Tax Court's jurisdiction was limited in that TEFRA proceeding to a "determin[ation of] all partnership items of the partnership for the partnership taxable year to which the notice of final partnership administrative adjustment relates [and] the proper allocation of such items among the partners," the IRS's district counsel only had authority to bind the government as to partnership items

for tax years before the Tax Court. *Id.* at 244 (citing *Gingerich v. United States* ("*Gingerich II*"), 82 Fed.Appx. 35, 39 (Fed. Cir.2003); 26 U.S.C. ("I.R.C.") § 6226(f)). By December 30, 1992, Mr. Redding had obtained the signatures of his clients on a settlement form approved by the IRS's counsel, and on that date he submitted the executed forms to the IRS's counsel. *Id.,* 77 Fed.Cl. at 237. After trial, this court determined that an agreement had been formed by the parties as of that time, December 30, 1992. *Id.* at 244. The court further concluded that the settlement by the parties of the partnership item was not ineluctably bound up with and contingent upon the settlement of non-partnership items but rather was independent, although the parties contemplated that a closing agreement would subsequently be prepared and executed to resolve non-partnership, but related, items. *Id.* at 247.

Subsequently, the IRS sent closing agreements to Mr. Redding on January 26, 1993. *Id.* at 237. These closing agreements recited settlement terms for both partnership and non-partnership items. *Id.* at 238, 243; *see, e.g.,* PX 23 (Form 906, Closing Agreement on Final Determination Covering Specific Matters) ("Form 906") (signed by representative of Lou Bess, Inc., on Aug. 12, 1993) at 170–74. Notably, one of the terms of the closing

agreements provided the factual predicate for imposition of enhanced interest on the resulting taxes due, pursuant to former Section 6621(c) of the Internal Revenue Code: "Any underpayments of tax attributable to the taxpayer's investment in the Partnership, are substantial underpayments attributable to the tax motivated transactions under [former] I.R.C. § 6621(c)." PX 23 (Form 906) at 172, ¶ 8.[1] The closing agreements were signed by the plaintiffs at various times from July to September 1993 and were sent by Mr. Redding to the IRS on September 10, 1993. *Gingerich III,* 77 Fed.Cl. at 238. On September 22, 1993, the closing agreements became effective when they were signed by an authorized representative of the IRS. *Id.*

The IRS did not issue the ensuing assessments for the plaintiffs until various dates in the spring and summer of 1994. *Gingerich III,* 77 Fed.Cl. at 238–39. These assessments included amounts both for additional tax and for interest, including interest assessed at enhanced rates pursuant to former I.R.C. § 6621(c). *See, e.g.,* DX 3 (Forms 2866, Certificate of Official Record) ("Forms 2866") (prepared respecting Fenton and Eunice Gingerich for tax years 1983–86) at 12–21. Applying I.R.C. § 6229, the court held that the assessments of tax were made beyond one year following the date on which

---

1. On July 18, 1984, as part of the Tax Reform Act of 1984, Pub.L. No. 98–369, 98 Stat. 494, Congress amended the Internal Revenue Code to provide that interest owed to the government accruing after December 31, 1984, relating to "any substantial underpayment attributable to tax motivated transactions" would be at this higher interest rate. *See* Pub.L. No. 98–369, § 144, 98 Stat. at 682–84 (initially codified at I.R.C. § 6621(d), later redesignated as § 6621(c) by the Tax Reform Act of 1986, Pub.L. No. 99–514, § 1511(c)(1)(A), 100 Stat. 2085, 2744). I.R.C. § 6621(c) was subsequently repealed by the Omnibus Budget Reconciliation Act of 1989, Pub.L. No. 101–239, § 7721(b), 103 Stat. 2106, 2399.

The 1984 Act identified certain "tax motived transactions" and authorized the Secretary of the Treasury to identify additional "tax motivated transactions" by regulation. *See* Pub.L. No. 98–369, § 144(a), 98 Stat. at 683. This added-interest provision was both prospective and retroactive in nature: the higher rate was applicable to interest accruing after December 31, 1984, attributable to an underpayment of tax due because of a "tax motivated transaction" whether

or not the "tax motivated transaction" occurred before or after enactment. *See Demos v. Commissioner,* 68 T.C.M. (CCH) 209, 1994 WL 387138 (1994); *see also Kennedy v. Commissioner,* 876 F.2d 1251, 1256 (6th Cir.1989); *De Martino v. Commissioner,* 862 F.2d 400, 408–09 (2d Cir.1988).

On December 19, 1989, Congress passed the Omnibus Budget Reconciliation Act of 1989, Pub.L. No. 101–239, 103 Stat. 2106, Section 7721(b) of which repealed I.R.C. § 6621(c). *See* 103 Stat. at 2399. However, this repeal only applied to "returns the due date for which (determined without regard to extensions) is after December 31, 1989." Pub.L. No. 101–239, § 7721(c), 103 Stat. at 2400; *see also Weiner v. United States,* 389 F.3d 152, 159 n. 7 (5th Cir. 2004). As a consequence, notwithstanding the repeal, Congress provided that interest at the higher "tax motivated transaction" rate would continue to accrue after 1989 if the underlying "tax motivated transaction" occurred in a tax year for which the initial due date for the tax return was on or before December 31, 1989. *See generally McGann v. United States,* 76 Fed.Cl. 745, 746 n. 1 (2007).

a settlement agreement was entered respecting GIA partnership items, and thus the assessments were made after the period during which Congress authorized the IRS to assess any applicable taxes. *Gingerich III*, 77 Fed.Cl. at 241, 247. Finding the assessments to be time-barred, the court determined that the plaintiffs were entitled to refunds and requested that the parties submit a reckoning of the proper amounts. *Id.* at 247.

The plaintiffs' proposed reckoning included all tax and interest paid. Pls.' Report of Overpayment Amounts to be Refunded (July 26, 2007). The government submitted a computation that explicitly excluded amounts that plaintiffs had paid attributable to interest at the enhanced rate of former I.R.C. § 6621(c). Def.'s Computations of the Amount of Judgment (July 26, 2007). The government argues that the court's prior holding that tax was not timely assessed does not render untimely the assessment of interest at the enhanced rates of former § 6621(c) because the assessment of interest occurred within one year of the effective date of the closing agreements, which contained a term specifically addressing such interest. Def.'s Supplemental Brief (Aug. 8, 2007) ("Def.'s Supp. Br.") at 3. The plaintiffs contest this position, arguing that the interest follows the tax and that both the tax and the associated enhanced interest ought to be refunded. Plaintiffs' Response to Government Objection to Refund of § 6621(c) Penalty Interest ("Pls.' Supp. Br.") at 1–3; Hr'g Tr. 4:9–19 (Aug. 10, 2007).

### DISCUSSION

### A. Timeliness

■ The government's contention that enhanced interest was properly collected independently of the associated tax appears for the first time in these post-trial, post-decisional proceedings to resolve the final judgment. The government's tardiness in raising this contention presents a significant issue. "Post-trial briefs are not generally appropriate places to raise one's theory of the case." *Shell Petroleum, Inc. v. United States*, 182 F.3d 212, 219 n. 14 (3d Cir.1999). Absent extraordinary circumstances, it is too late to raise for the first time a new defense or limitation on damages when litigation has progressed to the post-trial, post-decisional stage where proposed computations for judgment are being received. *See Principal Life Ins. Co. v. United States*, 76 Fed.Cl. 326, 326 (2007) (holding that a setoff defense raised for the first time at that stage by the government would not be permitted because it was untimely). The government "may not, when the need strikes it, transform a victory into a pyrrhic one by raising" a new defensive theory "at the last possible moment" after a decision on tax liability. *Id.* at 328. "Obviously it would be grossly unfair to allow a plaintiff to go to the expense of trying a case only to be met by a new defense after trial." *Bradford–White Corp. v. Ernst & Whinney*, 872 F.2d 1153, 1161 (3d Cir.1989). These precedents are based upon theories of waiver or abandonment. "Under Rule 16 of the Federal Rules of Civil Procedure, which is virtually identical to RCFC 16, legal[ ] and ... factual theories not raised in pretrial filings generally are considered to be waived or abandoned." *Principal Life Ins. Co. v. United States*, 70 Fed.Cl. 144, 157 (2006) (citing *Price v. Inland Oil Co.*, 646 F.2d 90, 95–96 (3d Cir.1981); *Rodrigues v. Ripley Indus.*, 507 F.2d 782, 786–87 (1st Cir.1974); *Zwicker Knitting Mills v. United States*, 1980 WL 4737 at *9–10 (Ct.Cl. Trial Div. 1980)).

■ Trial was held in these cases specifically to resolve two issues identified by the court of appeals as raising genuine disputes of material fact, *viz.*, whether the parties required a closing agreement to effectuate the settlement of partnership items before the Tax Court, and, if not, whether a so-called acceptance form constituted a valid acceptance of a settlement offer by the IRS's counsel. *Gingerich II*, 82 Fed.Appx. at 39. In the government's pre-trial submissions, no issue was raised that would have led to separate treatment of tax and enhanced interest. The government's position as expressed in its Pre–Trial Memorandum of Contentions of Law and Fact ("Def.'s Pre–Tr. Mem.") was that "partnership items underwent ... conversion on the date the IRS and plaintiffs entered into ... settlement agreement[s]"

and that "the settlement agreements between the IRS and plaintiffs were not entered into until the Closing Agreements were [executed by both parties]." Def.'s Pre–Tr. Mem. at 10 (quotations and alterations omitted). No argument was advanced by the government that even if the partnership items were settled before the execution of the closing agreements, the date of the execution of the closing agreements would nonetheless control the time limitations applicable to assessment of interest. At the trial, the focus remained on whether a settlement of partnership items was reached in December 1992, in advance of the settlement of non-partnership items by closing agreements executed later, in 1993. See Gingerich III, 77 Fed.Cl. at 246–47.[2]

In some situations the court has considered a belated contention raised by a party. Such consideration has occurred where opposing counsel did not object, opposing counsel did not assert that it was prejudiced, or the record of the trial provided an adequate basis for ruling upon the issue. See Principal Life, 70 Fed.Cl. at 157. Here, the plaintiffs do object and do assert prejudice. Pls.' Supp. Br. at 4–5; cf. John R. Sand & Gravel Co. v. United States, 62 Fed.Cl. 556, 568 (2004) ("This argument [about the applicability of a statute of limitations] appears to be presented for the first time in defendant's post-trial briefing.... [P]laintiff raised no objection to defendant's argument.... The court finds that the [belated] defense ... was tried by the implied consent of the parties."), vacated & remanded on other grounds, 457 F.3d 1345 (Fed.Cir.2006), cert. granted, — U.S. ——, 127 S.Ct. 2877, 167 L.Ed.2d 1151 (May 29, 2007). In this instance, plaintiffs have not consented, expressly or impliedly, to the belated interposition of the government's contention that the assessment of interest stands on a separate footing from the assessment of the associated tax, and the court finds that it would be prejudicial to plaintiffs for the government now to be allowed to raise the issue.

### B. The Limitations Issue

■ Assuming for purposes of analysis that the question of timeliness is not dispositive, there is no merit to the government's contention that a separate limitations period applies to allow assessment of enhanced interest even when assessment of the associated tax is barred. The government's contention is a novel one that, to provide context, requires a brief review of fundamental partnership-tax procedural provisions. Resolution of partnership-tax controversies is governed by procedures enacted by the Tax Equity and Fiscal Responsibility Act of 1982, Pub.L. No. 97–248, 96 Stat. 324, 648–671 ("TEFRA") (codified in scattered sections of the I.R.C., including especially §§ 6221–6234). McGann, 76 Fed.Cl. at 746; Keener v. United States, 76 Fed.Cl. 455, 467–70 (2007) (describing the TEFRA procedures). Under TEFRA, partnership items are resolved at a partnership-level proceeding. Gingerich III, 77 Fed.Cl. at 241 n. 12 (citing I.R.C. §§ 6221, 7422(h); Prochorenko v. United States, 243 F.3d 1359, 1363 (Fed.Cir. 2001); Keener, 76 Fed.Cl. at 458–59). This court determined that the settlement entered by the parties as of December 30, 1992, concerned a partnership item. Gingerich III, 77 Fed.Cl. at 245. In contrast, non-partnership items are resolved at the individual-partner level. Id., at 241 n. 12 (citing Crnkovich v. United States, 202 F.3d 1325, 1328–29 (Fed.Cir.2000)). Between these two poles falls a category of "affected items," hybrids that depend upon a partnership-level determination but also have a non-partnership aspect. Id. (citing Keener, 76 Fed.Cl. at 460–61 (in turn citing Katz v. Commissioner, 335 F.3d 1121, 1124 (10th Cir.2003); GAF Corp. & Subs. v. Commissioner, 114 T.C. 519, 528, 2000 WL 863148 (2000); Arthur B. Willis, John S. Pennell & Philip F. Postlewaite, Partnership Taxation ¶ 20.02[4][c] (6th ed.1999))). The parties agree that interest at the enhanced rate of former Section 6621(c) is an affected item. See Pls.' Post–Tr. Br. at 3 n. 8; Def.'s Supp. Br. at 2; see

---

**2.** Here, the government asserts the court "did not make any finding regarding the validity of the Closing Agreements." Def.'s Supp. Br. at 3. This statement is correct, but that very circumstance indicates that, because of the importance of determining the trigger for the limitations period, the court was concerned with the dispute over when settlement of partnership items occurred, not over the closing agreement.

*also McGann,* 76 Fed.Cl. at 753–54 & n. 16 (citing *Prochorenko v. United States,* 243 F.3d 1359, 1365 (Fed.Cir.2001); *Slovacek v. United States,* 40 Fed.Cl. 828, 831 (1998)); *Ertz v. Commissioner,* 93 T.C.M. (CCH) 696, 2007 WL 174133, at *14 (2007). Non-partnership items and affected items could not have been settled by the agreement dated December 30, 1992, because the IRS's counsel lacked authority to settle them. *Gingerich III,* 77 Fed.Cl. at 244. Instead, these items were settled through execution of the closing agreements on September 22, 1993. *Id.* at 238.

As explained in *Gingerich III,* Congress has statutorily limited the time within which the IRS may assess a taxpayer with income taxes attributable to a partnership item or an affected item. 77 Fed.Cl. at 240–41. In I.R.C. § 6229(f)(1), Congress has established a special rule for the extended timing of assessments in certain situations where partnership items are transformed into non-partnership items:

> If before the expiration of the period otherwise provided in this section for assessing any tax imposed by subtitle A [*i.e.,* income taxes] with respect to the partnership items of a partner for the partnership

taxable year, such items become non-partnership items by reason of 1 or more of the events described in subsection (b) of section 6231, the period for assessing any tax imposed by subtitle A which is attributable to such items (or any item affected by such items) shall not expire before the date which is 1 year after the date on which the items become non-partnership items.

I.R.C. § 6229(f)(1) (first sentence) The entry by the Secretary of the Treasury and a partner into a settlement agreement respecting partnership items is one of the events described in Subsection (b) of Section 6231 that operates to transform partnership items into non-partnership items for a partner for a particular taxable year. I.R.C. § 6231(b)(1)(C); *Gingerich III,* 77 Fed.Cl. at 241.[3]

The government argues that because the assessments of interest were made within one year of the date the *closing agreements* were executed, the assessment of interest was timely under I.R.C. § 6229(f), even though assessments of tax were not made within one year of the settlement agreement. Def.'s Supp. Br. at 3; Hr'g Tr. 14:20–22 (Aug. 10, 2007).[4] This argument fails be-

---

**3.** "Because § 6229 does not state an end date or otherwise set forth a maximum period, it does not, on its face, create a statute of limitations." *AD Global Fund, LLC v. United States,* 481 F.3d 1351, 1354 (Fed.Cir.2007). *AD Global* holds that Section 6229(a) "contains no mandatory words establishing a time within assessments must be made" and therefore "does not create an independent statute of limitations." 481 F.3d at 1354. The Federal Circuit explained that, in Section 6229(a), Congress's use of "the phrase 'shall not expire before' ... leaves open the possibility that the applicable limitations period may expire after the periods set forth therein." *Id.* (quoting *Crnkovich,* 202 F.3d at 1335 n. 7). Thus, I.R.C. § 6229 ordinarily has the effect of extending a limitations period that might otherwise have expired.

**4.** The government has not claimed that, notwithstanding Section 6229(f), the assessment of enhanced interest under former Section 6621(c) was authorized by some other Code section establishing a period for assessment that had not expired by the time the interest was assessed by the IRS in the spring and summer of 1994. *See* Hr'g Tr. 26:8–16 (Aug. 10, 2007) ("[O]ur position would be that the specific statute ... would control over the general rule in [Section] 6601(g) .... In other words, we have a specific provision

in [Section] 6229(f) that sets out one year from the date of settlement [*i.e.,* the date of the closing agreement]."). As plaintiffs correctly observe, assessment of interest in this case would not be authorized by the Code's general provisions for the assessment of interest. Pls.' Supp. Br. at 2–3. Those general provisions do not authorize the government to assess or collect interest at a time outside "the period within which the tax to which such interest relates may be collected." I.R.C. § 6601(g). With few exceptions not pertinent here, Congress permits collection of tax:

> [w]here the assessment of any tax ... has been made within the period of limitation properly applicable thereto, such tax may be collected by levy or by proceeding in court, but only if the levy is made or the proceeding begun—(1) within 10 years after the assessment of the tax.

I.R.C. § 6502(a) (quoted by Pls.' Supp. Br. at 2). Because the IRS may only collect tax for which a timely assessment is made, *see* I.R.C. § 6502(a), and interest may only be assessed while the associated tax may be collected, *see* I.R.C. § 6601(g), and because the IRS did not timely assess tax here, *Gingerich III,* 77 Fed.Cl. at 247, Sections 6502 and 6601 do not provide the government an avenue by which it could have assessed the related interest in these cases.

cause the execution of the settlement agreement and of the closing agreement do not independently trigger a separate period for assessment. Rather, Section 6229(f)(1) ties together an extended limitations period for assessment of tax due to partnership items becoming non-partnership items *and,* as the parenthetical phrase specifies, "any item affected by such items." In short, for *both* partnership items *and affected items (i.e.,* "any item affected by such items"), the relevant starting point for the one-year period of the special rule is "the date on which the [partnership] items became non-partnership items." I.R.C. § 6229(f)(1).[5]

The closing agreements did not independently trigger the extended limitations period provided by Section 6229(f)(1) because the agreements did not resolve partnership items, only affected items and non-partnership items. *See* I.R.C. § 6231(b)(1) (enumerating the situations where "partnership items of a partner for a partnership taxable year ... become non-partnership items."). The date on which non-partnership items and affected items were settled simply is not a pertinent event for the statutory scheme establishing the time period during which the disputed assessments were permitted to have

been made. Because the partnership items were settled as of December 30, 1992, Section 6229(f)(1) does not provide the IRS with authority to make assessments relating to partnership items or affected items beyond December 30, 1993. Accordingly, assessments of interest after that date were untimely, just as assessments of tax after that date were untimely.[6]

## C. No Contractual Extension

The government's proffered computation is also erroneous based upon an examination of the language of the closing agreements. Statutorily, the second sentence of I.R.C. § 6229(f)(1) permits the one-year extended limitations period established by the special rule in the first sentence to "be [further] extended with respect to any partner by agreement entered into by the Secretary and such partner." Though the parties consequently could have included a provision to extend the time for assessment in the closing agreement, they did not. *See, e.g.,* PX 25 (Form 906, signed by Mr. and Mrs. Gingerich on July 13 and 16, 1993, respectively, and by George Pinero for the IRS on September 22, 1993) at 181–83.

The legal context for the settlement and for the later closing agreements was "firmly

---

**5.** *Cf. Field v. United States,* 381 F.3d 109, 111–13 (2d Cir.2004) (applying I.R.C. § 6601(g), which provides that "[i]nterest prescribed under this section on any tax may be assessed and collected at any time during the period within which the tax to which such interest relates may be collected."). However, the court of appeals in *Field* concluded that it "need not decide whether section 6621(c) interest is indeed an 'affected item,' " *id.* at 112, and thus it did not address the issues of statutory interpretation that arise in this case.

**6.** The government finally argues that assessment of interest does not require valid assessments of the underlying tax, contending that such linkage would vitiate the closing agreements. Def.'s Supp. Br. at 3–4. The cases cited by the government for this proposition actually run counter to its position. *See id.* (citing *Manko v. Commissioner,* 126 T.C. 195, 2006 WL 1049364 (2006)); *Marathon Oil Co. v. United States,* 42 Fed.Cl. 267 (1998), *aff'd,* 215 F.3d 1343 (Fed.Cir.1999). In *Manko,* the Tax Court held that "collection may not proceed because [the IRS] failed to follow the law regarding assessments, not because [the court] disregard[ed] the parties' closing agreement." 126 T.C. at 204. While the court recognized that I.R.C. § 7121 required it to "give full effect to the closing agreement," the court was

"not constrained to hold that [the IRS] may proceed with collection simply because the collection proceeding is for a year in which there was a closing agreement between the parties." *Id.* Of note, the Tax Court did not address the question of whether, in spite of an invalid assessment of tax, interest could still be assessed. The Tax Court simply held "that [the IRS] may not proceed with collection of [taxpayers'] liabilities," without distinguishing between liabilities attributable to tax, interest, or other additions. *Id.* In *Marathon Oil,* the court noted that "by executing the closing agreements [the taxpayer] has in essence acknowledged that the deficiency is legitimate." 42 Fed.Cl. at 280 (cited by Def.'s Supp. Br. at 4). Having found the underlying assessment of tax to be procedurally proper ("where the taxpayer has already agreed to the deficiency, the notice requirement is unnecessary"), the court did not find the assessment of interest to be improper. *Id.* at 280–81. Applying the time limitations of Section 6502(a), the court recognized that its "result might be different" if it had found the challenged assessment of interest instead to be a "new and improper assessment[ ] after the period of limitations." *Id.* at 278–79, 281 n. 10.

established by the time final negotiations were occurring," because the parties then had available the decision in *Treaty Pines Investments Partnership v. Commissioner*, 967 F.2d 206 (5th Cir.1992) (Sneed, J.) (holding that the settlement of partnership items need not be conditioned on the settlement of non-partnership items absent the parties actually making such a condition attendant to their agreement). *See Gingerich III*, 77 Fed.Cl. at 247. Moreover, in transmitting the closing agreements to the IRS Appeals Office for execution, Mr. Wilpon, counsel in the Manhattan District Counsel's office of the IRS, showed his understanding of the context by noting that he "anticipate[d] that the taxpayers w[ould] make a *Treaty Pines Investments* type argument" and therefore "any assessments made as a result of these closing agreements should be made [before No]vember 1, 1993." PX 156 (Form 1734, Transmittal Memorandum, Wilpon to Pinero (undated)) at 2689; *see also Gingerich III*, 77 Fed.Cl. at 238. Despite this foresight, the IRS did not insist that the closing agreements extend the time within which to make assessments. A court "cannot rewrite a contract or insert words to which a party has never agreed." *American Capital Corp. v. Federal Deposit Ins. Corp.*, 472 F.3d 859, 865 (Fed.Cir.2006). Accordingly, the court concludes that there also is no contractual basis for a further extension of the otherwise applicable time limitation for an assessment.

### D. Substitution of Parties

Lastly, pending before the court is the plaintiffs' motion, filed July 25, 2007, seeking the substitution of parties. As noted in *Gingerich III*, testimony at trial established that a number of plaintiffs have died during the lengthy pendency of this litigation. 77 Fed.Cl. at 236, n. 6. RCFC 25 provides that "[i]f a party dies and the claim is not thereby extinguished, the court may order substitution of the proper parties." RCFC 25(a)(1). The government has not objected to the plaintiffs' request for substitution. Accordingly, the plaintiffs' motion will be granted. Eunice Gingerich, Executor of the Estate of Fenton Gingerich, shall be substituted for

Fenton Gingerich in the case docketed as No. 98–533. Ted Liebovich, Attorney–in–Fact and Trustee of the Albert Liebovich Living Trust, shall be substituted for Albert Liebovich in the case docketed as No. 98–5335. Gregory Liebovich shall be substituted for Carl Liebovich in the case docketed as No. 98–5337. Lou Liebovich, Attorney–in–Fact and Trustee for the Joe Liebovich Living Trust, shall be substituted for Joe Liebovich in the case docketed as No. 98–5341. Lou Liebovich, Attorney-in-Fact and Trustee for Joe Liebovich Living Trust, shall be substituted for Belle Liebovich in the case docketed as No. 98–5342. Stephanie Doran, Personal Representative of the Estate of Charles H. Scruggs, shall be substituted for Charles Scruggs in the case docketed as No. 98–5348. Dr. Seung C. Karl, as sole surviving spouse, shall be substituted for Mrs. Young Ho Karl in the case docketed as No. 98–5332.

### Conclusion

For the reasons stated above, the court adopts the computations provided by the plaintiffs for the amounts due. The Clerk is directed to enter final judgment for plaintiffs for refunds of tax and enhanced interest as follows:

| | Tax Year | Amount |
| --- | --- | --- |
| Eunice Gingerich, Executor of the Estate of Fenton Gingerich, and Eunice Gingerich, jointly [7] | | |
| | 1983 | $ 19,318.89 |
| | 1984 | 37,621.66 |
| | 1985 | 22,768.63 |
| | 1986 | 21,841.21 |
| Seung C. Karl, individually and as sole surviving spouse of Young Ho Karl | | |
| | 1984 | 56,820.61 |
| | 1986 | 1,304.78 |
| Choong H. Kim and Joung S. Kim, jointly | | |
| | 1983 | 10,629.71 |
| | 1984 | 36,492.38 |
| | 1985 | 26,135.48 |
| | 1986 | 11,418.13 |
| Ted Liebovich, Attorney-in-Fact and Trustee of the Albert Liebovich Living Trust, and Dorothy Liebovich, jointly | | |
| | 1983 | 7,305.34 |

---

7. The married couples filed tax returns jointly. The refunds due them are likewise awarded jointly.

| | | |
|---|---|---|
| | 1984 | 9,527.21 |
| | 1985 | 9,580.72 |
| Gregory Liebovich, as Trustee of the Carl Liebovich Living Trust, and Nelle D. Liebovich, jointly | | |
| | 1985 | 6,590.66 |
| | 1986 | 1,930.73 |
| Gregory Liebovich and Gail Liebovich, jointly | | |
| | 1983 | 5,907.74 |
| | 1984 | 6,825.88 |
| | 1985 | 2,777.35 |
| | 1986 | 6,227.99 |
| Lou Liebovich, Attorney-in-Fact and Trustee for the Joe Liebovich Living Trust | | |
| | 1983 | 7,637.39 |
| | 1984 | 9,092.40 |
| | 1985 | 6,629.21 |
| | 1986 | 1,968.26 |
| Larry Liebovich and Barbara Liebovich, jointly | | |
| | 1983 | 4,595.27 |
| | 1984 | 6,062.91 |
| | 1985 | 2,802.72 |
| | 1986 | 5,427.72 |
| Samuel Liebovich and Erna Liebovich, jointly | | |
| | 1983 | 1,630.50 |
| | 1984 | 3,149.36 |
| | 1985 | 9,297.90 |
| | 1986 | 2,488.45 |
| Eugene M. Rosol | | |
| | 1983 | 19,464.44 |
| | 1984 | 24,026.95 |
| | 1985 | 12,155.30 |
| | 1986 | 8,577.66 |
| Stephanie Doran, Personal Representative of the Estate of Charles H. Scruggs | | |
| | 1983 | 8,926.60 |
| | 1984 | 39,966.30 |
| | 1985 | 27,597.94 |
| | 1986 | 19,246.36 |
| Dae–Sob Yoon and Moon K. Yoon, jointly | | |
| | 1983 | 15,819.26 |
| | 1984 | 15,806.15 |
| | 1985 | 15,981.74 |

In addition, the judgment shall provide that interest shall be paid to plaintiffs "at the overpayment rate established under [I.R.C. § ] 6621." I.R.C. § 6611(a).

Plaintiffs' motion for the substitution of representatives for deceased parties is GRANTED.

It is so ORDERED.