# United States Tax Court

REVIEWED
164 T.C. No. 8

ALBERTO GARCIA, JR.,
Petitioner

v.

COMMISSIONER OF INTERNAL REVENUE,
Respondent

_____

Docket No. 27496-22P.                    Filed May 19, 2025.

_____

P failed to pay tax liabilities totaling more than $100,000 that R assessed between 2007 and 2010. R filed suit in federal district court to reduce those liabilities to judgment in 2014; the district court entered a default judgment against P. In 2022, R certified to the Secretary of State that P has a "seriously delinquent tax debt" within the meaning of I.R.C. § 7345(b). P filed a Petition with this Court under I.R.C. § 7345(e)(1) to challenge the certification.

R filed a Motion for Summary Judgment maintaining that the certification was proper. R's Motion argues, in relevant part, that P's liabilities were "legally enforceable" within the meaning of I.R.C. § 7345(b) because the 2014 default judgment extended the limitations periods for collection after assessment with respect to those liabilities until at least 2034. P filed a Response, alleging that he was never served in the district court action, that the debt is no longer enforceable, and thus that R's certification was erroneous.

*Held*: Our determination of whether R's certification under I.R.C. § 7345(a) is erroneous is made not simply on the administrative record but on a new record made at the

Tax Court, which may include, where appropriate (as here), evidence introduced at trial.

*Held, further*, a tax liability is not "legally enforceable" within the meaning of I.R.C. § 7345(b) if the limitations period for collecting it after assessment has expired.

*Held, further*, whether the relevant limitations periods for collection remained open at the time of the certification here turns on whether P was served in the district court action, which is a disputed issue of fact.

*Held, further*, because a material issue of fact exists, R is not entitled to summary judgment.

TORO, *J.*, wrote the opinion of the Court, which KERRIGAN, *C.J.*, and BUCH, NEGA, PUGH, ASHFORD, URDA, COPELAND, JONES, GREAVES, MARSHALL, WEILER, WAY, LANDY, ARBEIT, GUIDER, JENKINS, and FUNG, *JJ.*, joined.

———————

*Steven L. Powell*, for petitioner.

*Susan K. Bollman*, *John S. Hitt*, and *Cierra C. Harris*, for respondent.

OPINION

TORO, *Judge*: This passport case involving old tax liabilities requires the Court to decide an issue of first impression concerning the scope of our review in cases arising under section 7345(e).[1] Here is why.

On October 17, 2022, the Commissioner of Internal Revenue certified to the Secretary of State that petitioner, Alberto Garcia, Jr.,

_____

[1] Unless otherwise indicated, statutory references are to the Internal Revenue Code, Title 26 U.S.C. (I.R.C. or Code), in effect at all relevant times, regulation references are to the Code of Federal Regulations, Title 26 (Treas. Reg.), in effect at all relevant times, and Rule references are to the Tax Court Rules of Practice and Procedure.

owes a "seriously delinquent tax debt" related to tax years 2005, 2006, 2007, and 2008.  I.R.C. § 7345(a).[2]

For a federal tax liability to constitute a "seriously delinquent tax debt," that liability must be "legally enforceable" as of the time of the Commissioner's certification.  I.R.C. § 7345(b)(1).  A tax liability is not legally enforceable if the period of limitations for collecting it has expired.  *See* I.R.C. § 6502(a).

Ordinarily, a tax liability must be collected within ten years of assessment.  *Id.*  The liabilities at issue here were assessed more than ten years before October 2022.  Mr. Garcia therefore contends they are no longer legally enforceable, making the certification erroneous.

The Commissioner disagrees.  He maintains that an exception to the ten-year rule applies because Mr. Garcia's tax liabilities were reduced to judgment in a suit filed in the U.S. District Court for the Southern District of Texas (district court suit).  *United States v. Garcia*, No. 14-209 (S.D. Tex. Aug. 11, 2014).  Relying on 28 U.S.C. § 3201(c)(1), the Commissioner asserts the government has at least another 20 years from the date of the judgment to collect them.  *See* I.R.C. § 6502(a) (flush language).  The Commissioner therefore has moved for summary judgment that the certification was not erroneous.

Mr. Garcia resists the Commissioner's Motion.  He maintains that he was never served in the district court suit and that the judgment entered in that suit is void.

To resolve the Motion, we must decide a question that we have until now found unnecessary to answer in passport cases:  What is the scope of our review or, put differently, on what evidence do we determine whether the Commissioner's certification that a seriously delinquent tax

---

[2] As we have explained before,

[s]ection 7345 outlines a two-step procedure whereby the Commissioner sends certification to the Secretary of the Treasury, who then transmits the certification to the Secretary of State.  In practice, the IRS follows a one-step procedure whereby the Commissioner, as the Secretary's delegate, transmits the certification directly to the State Department.  *See* I.R.C. § 7701(a)(11); Internal Revenue Manual 5.1.12.27.1, .6, .8 (Dec. 20, 2017).

*Adams v. Commissioner*, 160 T.C. 1, 6 n.4 (2023), *aff'd*, 122 F.4th 429 (D.C. Cir. 2024).

debt exists is correct?[3]  As we will explain, the text of the statute read in view of our precedents directs that the scope of review is de novo. That is, in appropriate circumstances like the ones here, our review is not limited to the administrative record but must include evidence introduced at a trial.

And because Mr. Garcia raises a genuine issue of material fact as to whether he was served in the district court suit, we cannot conclude at this stage of the proceedings that the liabilities at issue are legally enforceable.  We therefore will deny the Commissioner's Motion.

*Background*

The following facts are derived from the parties' pleadings, Motion papers, and a hearing on the Motion.  They are stated solely for the purpose of ruling on the Motion before us and not as findings of fact in this case.[4]  *See Rowen*, 156 T.C. at 103.

On October 17, 2022, the Commissioner certified that Mr. Garcia owed a "seriously delinquent tax debt" pursuant to section 7345(a).  The Commissioner based his certification on $129,959.05 of unpaid liabilities relating to Mr. Garcia's income tax and taxes Mr. Garcia owed as an employer.  The Commissioner sent Notice CP508C, Notice of Certification of Your Seriously Delinquent Federal Tax Debt to the State Department (Notice), to Mr. Garcia's last known address at the same time.

The liabilities underpinning the Commissioner's certification with respect to Mr. Garcia are old.  With one exception immaterial to our analysis and not counting interest, they were assessed between

---

[3] *See, e.g.*, *Rowen v. Commissioner*, 156 T.C. 101, 106 (2021) (reviewed) ("Although a court reaching a decision on the merits ordinarily must consider both the scope of review (that is, what evidence the court will consider) and the standard of review (that is, how the court will evaluate the evidence it considers), *see Kasper v. Commissioner*, 150 T.C. 8, 14 (2018), we need not do so here."); *see also, e.g.*, *Meduty v. Commissioner*, 160 T.C. 526, 529 (2023) (citing *Rowen*, 156 T.C. at 106) (same); *Adams*, 160 T.C. at 5–6 (citing *Rowen*, 156 T.C. at 106) (same); *Pfirrman v. Commissioner*, T.C. Memo. 2025-22, at *3 (citing *Rowen*, 156 T.C. at 106) (same).

[4] But see the discussion in note 10 below regarding the application of Rule 121(h).

March 26, 2007, and August 23, 2010.[5] The Commissioner filed, for each liability, a Notice of Federal Tax Lien pursuant to section 6323 between March 21, 2008, and February 11, 2011. He sent Notices of those filings to Mr. Garcia's last known address, as required by section 6320(a), between March 27, 2008, and February 15, 2011. Mr. Garcia requested a Collection Due Process (CDP) hearing in response to only one of those Notices; that hearing concluded on April 11, 2009. It is uncontested that the time for seeking hearings on the other Notices had expired before October 2022.

As required by section 6330(a), between March 17, 2008, and October 25, 2010, the Commissioner sent to Mr. Garcia Notices of Intent to Levy and Right to a CDP Hearing. Mr. Garcia did not request a CDP levy hearing in response to any of the Notices mailed to him.

On January 30, 2014, the Commissioner initiated the district court suit to reduce Mr. Garcia's liabilities to judgment. Mr. Garcia did not appear in the district court suit; nor did anyone appear on his behalf. On August 11, 2014, the district court entered a default judgment against Mr. Garcia.

As already noted, the Notice was issued on October 17, 2022. Mr. Garcia lived in Texas when he timely filed his Petition with our Court on December 14, 2022.[6] On October 18, 2023, the Commissioner filed a Motion for Summary Judgment.

We set the Motion for a hearing at our March 18, 2024, session in Houston, Texas. At that hearing, pro bono lawyers participating in the Court's Calendar Call Program made a limited appearance on Mr. Garcia's behalf. Mr. Garcia's lawyers advanced several arguments, one of which was that the debt might be unenforceable. This was so, the argument went, because the periods of limitations for collection were no

---

[5] The one liability not assessed on or before August 23, 2010, was assessed on June 29, 2018. That liability amounted to $44. With respect to that liability, the Commissioner filed a Notice of Lien on June 29, 2018, and notified Mr. Garcia of that filing on July 3, 2018. Mr. Garcia did not request a CDP hearing in response to the CDP lien notice. And no Notice of Intent to Levy was issued with respect to the liability. Because this liability is too small to make a difference to our analysis, we do not discuss it further.

[6] Absent stipulation to the contrary, *see* I.R.C. § 7482(b)(2), appeal of this case would lie to the U.S. Court of Appeals for the District of Columbia Circuit, *see* I.R.C. § 7482(b)(1) (flush language); *Adams v. Commissioner*, 122 F.4th at 433–34.

longer open as Mr. Garcia had not been served in connection with the district court suit. Mr. Garcia himself contested being served.

At the conclusion of the hearing, the parties sought additional time to explore resolving the case, and the Commissioner sought additional time to brief the enforceability issue. We agreed to provide the parties additional time and denied the October 2023 Motion without prejudice to the Commissioner's renewing it.

Following the hearing, Mr. Garcia obtained representation, but unfortunately the parties were unable to reach a resolution. The Commissioner filed a new Motion for Summary Judgment on August 28, 2024, which was then supplemented on September 30, 2024. A Response was filed on September 27, 2024.

The Court held a telephone conference call with the parties on October 11, 2024, to discuss the status of the case. During that call, Mr. Garcia's counsel indicated that he might pursue relief from the August 11, 2014, judgment in the U.S. District Court for the Southern District of Texas. The Court is unaware, however, of counsel's efforts on that front and sees no reason to further delay ruling on the August 2024 Motion.

## *Discussion*

### I. *General Principles of Law*

#### A. *Summary Judgment*

The purpose of summary judgment is to expedite litigation and avoid costly, time-consuming, and unnecessary trials. *Fla. Peach Corp. v. Commissioner*, 90 T.C. 678, 681 (1988).

Generally, in cases that are subject to a de novo scope of review, this Court may grant summary judgment when there is no genuine dispute as to any material fact and a decision may be rendered as a matter of law. Rule 121(a)(2); *Sundstrand Corp. v. Commissioner*, 98 T.C. 518, 520 (1992), *aff'd*, 17 F.3d 965 (7th Cir. 1994). In such cases, the moving party bears the burden of proving that summary judgment is warranted. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986); *Espinoza v. Commissioner*, 78 T.C. 412, 416 (1982). And, in deciding whether to grant summary judgment in such cases, we construe factual materials and inferences drawn from them in the light most favorable to the adverse party. *Sundstrand Corp.*, 98 T.C. at 520.

As we recognized in *Van Bemmelen v. Commissioner*, 155 T.C. 64, 78 (2020), in cases in which the Court "must confine [itself] to the administrative record to decide whether there has been an abuse of discretion," the ordinary "summary judgment standard is not generally apt." In those cases, "summary judgment serves as a mechanism for deciding, as a matter of law, whether the agency action is supported by the administrative record and is not arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law." *Id.* at 79; *see also* Rule 121(j).

Our Court has not yet decided the scope of review and the standard of review for cases arising under section 7345(e). As we observed in *Rowen*, 156 T.C. at 106, until now we have had no need to consider the scope and standard of review because "there [had been] no dispute between the parties with respect to the evidence we should consider . . . [and] our decision would [have been] the same whether we reviewed the Commissioner's certification de novo or for abuse of discretion." The circumstances here are different. The nature of the evidence considered on this Motion for Summary Judgment could be determinative to our decision, so we must decide the proper scope of review. As explained below, we conclude that review of section 7345 certifications should occur on a new record made at the Tax Court, which may include, where appropriate, evidence introduced at trial.[7]

B. *Certifications of Seriously Delinquent Tax Debts*

Congress enacted section 7345 as part of the Fixing America's Surface Transportation Act (FAST Act), Pub. L. No. 114-94, § 32101(a), 129 Stat. 1312, 1729 (2015). We provided a comprehensive description of FAST Act § 32101 and Code section 7345 in *Rowen* and need not repeat that discussion here. *See also Adams v. Commissioner*, 122 F.4th at 431–32. We focus instead on the portions of section 7345 relevant to the dispute before us.

If the Commissioner certifies that a taxpayer owes "a seriously delinquent tax debt," under section 7345(a), that certification shall be transmitted "to the Secretary of State for action with respect to denial, revocation, or limitation of [the taxpayer's] passport." The

---

[7] But, as we also explain below, the need for trials in passport cases will likely be rare, because we expect the circumstances facing us here (where the relevant question cannot be answered by reviewing the administrative record) to arise infrequently.

Commissioner is responsible for notifying the taxpayer of the certification.  I.R.C. § 7345(d).

### 1.    *Definition of "Seriously Delinquent Tax Debt"*

The term "seriously delinquent tax debt" is defined in section 7345(b).  It generally means

> an unpaid, legally enforceable Federal tax liability of an individual—
>> (A) which has been assessed,
>> (B) which is greater than $50,000, and
>> (C) with respect to which—
>>> (i) a notice of lien has been filed pursuant to section 6323 and the administrative rights under section 6320 with respect to such filing have been exhausted or have lapsed, or
>>> (ii) a levy is made pursuant to section 6331.

I.R.C. § 7345(b)(1); *Adams v. Commissioner*, 122 F.4th at 431.  The threshold amount described in subparagraph (B) is modified by subsection (f) to account for inflation.  The threshold amount relevant here (i.e., the amount for the year when the section 7345 certification was made) was $55,000.  *See* Rev. Proc. 2021-45, § 3.59, 2021-48 I.R.B. 764, 774.

### 2.    *The Tax Court's Role in Reviewing Section 7345 Certifications*

When the Commissioner certifies that a taxpayer has a seriously delinquent tax debt, the taxpayer may petition this Court "to determine whether the certification was erroneous or whether the Commissioner has failed to reverse the certification."  I.R.C. § 7345(e)(1).  If we "determine[] that [the] certification was erroneous," we "may order the Secretary [of the Treasury] to notify the Secretary of State that such certification was erroneous."  I.R.C. § 7345(e)(2); *Adams v. Commissioner*, 122 F.4th at 432.  The statute specifies no other form of relief that we may grant.  *Ruesch v. Commissioner*, 25 F.4th 67, 70 (2d

Cir. 2022), *aff'g in part, vacating and remanding in part per curiam* 154 T.C. 289 (2020).[8]

II. *Analysis*

A. *Satisfied Requirements of Section 7345*

Aside from interest, Mr. Garcia's liabilities were assessed between March 26, 2007, and August 23, 2010, and both they and the relevant interest remain unpaid. *See* I.R.C. § 7345(b)(1)(A). Together, at the time of certification in 2022, they totaled an amount far greater than the $55,000 threshold. *See* I.R.C. § 7345(b)(1)(B); Rev. Proc. 2021-45, § 3.59. With respect to each component liability, the Commissioner filed a Notice of Lien pursuant to section 6323 and sent to Mr. Garcia a notice of such filing. *See* I.R.C. § 7345(b)(1)(C)(i). Mr. Garcia requested, and participated in, a CDP hearing in response to one of the Notices of Lien, and it is uncontested that the time for requesting a hearing on the others had passed. *See id.* And, with respect to all but one of the liabilities, a levy had been made pursuant to section 6331. *See* I.R.C. § 7345(b)(1)(C)(ii).

The Commissioner asserts that Mr. Garcia is not paying any of his debts pursuant to an agreement under section 6159 or 7122. *See* I.R.C. § 7345(b)(2)(A). Mr. Garcia has neither challenged this assertion nor set forth specific facts to show that a genuine dispute of fact exists on this issue. *See* Rule 121(d). Likewise, collection is not suspended with respect to Mr. Garcia. *See* I.R.C. § 7345(b)(2)(B).

---

[8] Section 7345(e) reads in full as follows:

> Sec. 7345(e). Judicial review of certification.—
>
> (1) In general.—After the Commissioner notifies an individual under subsection (d), the taxpayer may bring a civil action against the United States in a district court of the United States, or against the Commissioner in the Tax Court, to determine whether the certification was erroneous or whether the Commissioner has failed to reverse the certification. For purposes of the preceding sentence, the court first acquiring jurisdiction over such an action shall have sole jurisdiction.
>
> (2) Determination.—If the court determines that such certification was erroneous, then the court may order the Secretary to notify the Secretary of State that such certification was erroneous.

In short, the Commissioner has demonstrated that Mr. Garcia's outstanding liabilities satisfy all but one of the requirements to qualify as a "seriously delinquent tax debt" under section 7345.[9]   All that remains is to consider whether the liabilities are legally enforceable.[10] *See* I.R.C. § 7345(b)(1).

B.      *Legal Enforceability*

As we have already discussed, a liability must be legally enforceable to qualify as a "seriously delinquent tax debt."   I.R.C. § 7345(b)(1).   Not all potential errors render a liability unenforceable. *See, e.g.*, *Adams*, 160 T.C. at 13 ("Section 7345 requires simply that the liability 'has been assessed,' not that the liability 'has been *properly* assessed.'").   At a minimum, however, the phrase "legally enforceable" requires an inquiry into whether the limitations period for collection after assessment has expired with respect to all or part of the liability. *See Ruesch*, 154 T.C. at 296 ("We are also authorized to consider whether the tax debt 'has been fully satisfied or has become legally unenforceable.'   Sec. 7345(c)(2)(A).   The latter would be true where the collection period of limitations had expired.   *See* sec. 6502(a)."); *see also Adams*, 160 T.C. at 12 ("[A]lthough our opinion in *Ruesch* was deprived of its precedential effect, it has not lost its persuasive value.").

The Commissioner concedes as much.   As the Motion observes,

> Section 7345's requirement that a tax liability be "legally enforceable" refers not to the validity of the assessment, but rather verification that the liability can still be collected at the time a certification is made or is in effect. For example, a tax liability would not be "legally enforceable" if the period of limitations under I.R.C. § 6502(a) for collecting the tax had expired.

Resp't's Mot. 18.   To uphold the Commissioner's certification, therefore, we must determine that the limitations periods for collection after assessment have not expired.

---

[9] Mr. Garcia does not ask us to consider, nor can we consider, the merits of his underlying liabilities.

[10] In view of the foregoing, for purposes of future proceedings, the facts underlying our conclusion that Mr. Garcia's outstanding liabilities satisfy all of the requirements to qualify as a "seriously delinquent tax debt" under section 7345 (except for the enforceability point) shall be treated "as established in the case."   Rule 121(h).

Section 6502 generally requires the IRS to collect a tax liability, if at all, within ten years after the liability's assessment. I.R.C. § 6502(a)(1). Interest that accrues on an unpaid tax liability must be assessed and collected within the same period. I.R.C. § 6601(g); Treas. Reg. § 301.6601-1(f)(1); *see also Fisher v. United States*, 80 F.3d 1576, 1580 (Fed. Cir. 1996); *Gingerich v. United States*, 78 Fed. Cl. 164, 169 n.4 (2007).

Certain conditions extend the ten-year limitations period. As relevant here, if the United States brings an action in court to collect a liability and obtains a judgment, the limitations period for collection is extended until the judgment is satisfied or becomes unenforceable. I.R.C. § 6502(a) (flush language). The Federal Debt Collection Procedures Act of 1990, which provides "exclusive civil procedures" for the United States "to recover a judgment on a debt," does not provide a default duration for judgments entered under its procedures. 28 U.S.C. § 3001. *See generally* 28 U.S.C. §§ 3001–3308. The U.S. Court of Appeals for the Ninth Circuit has concluded that the Act's silence regarding judgment duration signals that judgments to which the Act applies last indefinitely, even if state law would impose a limitation. *See United States v. Gianelli*, 543 F.3d 1178, 1183 (9th Cir. 2008). The U.S. Court of Appeals for the Fifth Circuit has reached the same conclusion, albeit in an unpublished opinion. *See FTC v. Namer*, 481 F. App'x 958, 959–60 (5th Cir. 2012). In view of our disposition, we need not resolve now the precise duration of a judgment entered under the Act.

The Commissioner asserts that the 2014 judgment extended the limitations periods here until August 11, 2034. Resp't's Mot. 11, 20, 25. The Commissioner relies on 28 U.S.C. § 3201.[11] We accept arguendo solely for purposes of our analysis the Commissioner's legal conclusion. We go on to consider whether the factual foundations applicable to that conclusion are correct.

The Commissioner assessed all but one of Mr. Garcia's liabilities between March 26, 2007, and August 23, 2010. Absent any extension, the section 6502(a)(1) limitations periods for those liabilities would have expired between March 26, 2017, and August 23, 2020, more than two years before the Commissioner made his section 7345 certification.

---

[11] Under that section, a judgment in an action to collect a tax liability creates a 20-year lien on all real property of a judgment debtor. 28 U.S.C. § 3201(a), (c)(1). That lien may be further renewed for 20 years. 28 U.S.C. § 3201(c)(2).

The district court entered a default judgment against Mr. Garcia on August 11, 2014. In the Commissioner's view, that judgment extended the limitations periods until August 11, 2034, long after the Commissioner's certification. *See* I.R.C. § 6502(a) (flush language); 28 U.S.C. § 3201.

But Mr. Garcia asserts that he was never served in the 2014 action. Pet'r's Resp. 1. This is not the first time that he has disputed service in the action. His Calendar Call counsel made a similar assertion on the record at the March 18, 2024, hearing:

> [T]here is a question about whether that collection statute is still open. My understanding is, that the main grounds on which the collection statute was extended, was that there was—that Mr. Garcia was never served. And there was a judgment entered against him, and that extended it. And Mr. Garcia says he was never served. So there's at least some question to explore on that.

Tr. of Hous., Tex., Hr'g on Mar. 18, 2024, at 2–3.

Mr. Garcia echoed the same point, observing: "They said they served me, which never happened. . . . I asked for copies to see whether I was served, or my signature, that I was at that office and . . . that never happened . . . ." *Id.* at 14; *see also id.* ("I was unaware, and didn't have anything to do with [the district court suit].").

A judgment entered without personal jurisdiction over the defendant is void. *See, e.g.*, *Earle v. McVeigh*, 91 U.S. 503, 507 (1875) ("Standard authorities lay down the rule, that, in order to give any binding effect to a judgment, it is essential that the court should have jurisdiction of the person and the subject-matter; and it is equally clear that the want of jurisdiction is a matter that may always be set up against a judgment when sought to be enforced, or where any benefit is claimed under it, as the want of jurisdiction makes it utterly void and unavailable for any purpose." (citing *Borden v. Fitch*, 15 Johns. 121, 141 (N.Y. Sup. Ct. 1818))); *Combs v. Nick Garin Trucking*, 825 F.2d 437, 442 (D.C. Cir. 1987) ("Of course, an in personam judgment entered without personal jurisdiction over a defendant is void as to that defendant." (citing *Thos. P. Gonzalez Corp. v. Consejo Nacional De Produccion De Costa Rica*, 614 F.2d 1247, 1255 (9th Cir. 1980))); *see also Burnham v. Superior Ct. of Cal.*, 495 U.S. 604, 608–09 (1990) (Scalia, J.) (plurality opinion) (tracing the history of the rule); 10A Charles Alan Wright &

Arthur R. Miller, *Federal Practice and Procedure* § 2695 (4th ed. 2024) (collecting authorities). "And, since service of process is the means by which a court asserts jurisdiction to adjudicate the rights of a party, it is uniformly held that a judgment is void where the requirements for effective service have not been satisfied." *Combs*, 825 F.2d at 442 (footnote omitted). As the Fifth Circuit has summarized the relevant law, in cases

> in which the defendant makes no appearance and the judgment goes by default, the defendant may defeat subsequent enforcement in another forum by demonstrating that the judgment issued from a court lacking personal jurisdiction. *See* Pardo v. Wilson Line of Washington, Inc., 414 F.2d 1145 (D.C. Cir. 1969). Of course, the "burden of undermining [the judgment] rests heavily upon the assailant," Williams v. North Carolina, 325 U.S. 226, 233–234 (1945); and, should the attack fail, the default judgment becomes no less final and determinative on the merits of the controversy than a decree entered after full trial. Moyer v. Mathas, 458 F.2d 431 (5th Cir. 1972).

*Hazen Rsch., Inc. v. Omega Mins., Inc.*, 497 F.2d 151, 154 (5th Cir. 1974) (alteration in original); *see also Ins. Corp. of Ireland v. Compagnie des Bauxites de Guinee*, 456 U.S. 694, 706 (1982) ("A defendant is always free to ignore the judicial proceedings, risk a default judgment, and then challenge that judgment on jurisdictional grounds in a collateral proceeding." (citing *Baldwin v. Iowa State Traveling Men's Ass'n*, 283 U.S. 522, 525 (1931))).

If Mr. Garcia truly was not served in the 2014 district court suit, the district court's default judgment would be void. As a result, the period in which the Commissioner could have collected Mr. Garcia's liabilities would have expired between 2017 and 2020, and thus all but $44 of the liabilities would not be "legally enforceable" within the meaning of section 7345(b). Therefore, we must consider whether the district court established personal jurisdiction over Mr. Garcia in the district court suit.

Moreover, because the Commissioner's certification was made after Mr. Garcia's rights to petition the Tax Court for redetermination of a deficiency or review of a CDP determination had expired, and because the nonextended limitations periods would have run after

Mr. Garcia's rights to petition the Tax Court expired, this is Mr. Garcia's first opportunity to raise the limitations inquiry at the Tax Court. *Cf. Adams v. Commissioner*, 122 F.4th at 435 (prohibiting taxpayer from challenging underlying liability in passport action when he had earlier failed to pursue remedies at the Tax Court).

The Commissioner cites *Garcin v. Commissioner*, 22 B.T.A. 1027 (1931), for the proposition that the Tax Court "has previously held that a petitioner cannot collaterally attack a prior district court judgment by claiming there was improper service in the district court action." Resp't's Mot. 26. The Commissioner's reliance on *Garcin* is misplaced. *Garcin* did not involve a petitioner who sought to void a district court judgment because the petitioner was not served in the prior action. Rather, the *Garcin* petitioner sought to void a judgment against a company with respect to which the petitioner was the sole stockholder and a transferee. *Garcin*, 22 B.T.A. at 1035–36. The *Garcin* petitioner maintained that, even though he himself had been served in the prior action, as had the company's former secretary, service problems nevertheless rendered the judgment in that action void. *Id.* at 1038–39. The Board of Tax Appeals found the circumstances insufficient to support a successful collateral attack. *Id.*

Unlike the petitioner in *Garcin*, Mr. Garcia asserts that the judgment entered against him is void because he himself was not served. That challenge is entirely proper. *Cf. Earle*, 91 U.S. at 507 ("[I]t is equally clear that the want of jurisdiction . . . may always be set up against a judgment . . . where any benefit is claimed under it, as the want of jurisdiction makes it utterly void and unavailable for any purpose."); *United States v. Bigford*, 365 F.3d 859, 873 (10th Cir. 2004) ("[A] defendant in a [Deadbeat Parents Punishment Act] prosecution may challenge an underlying default support order on the basis that the state court that issued the order lacked personal jurisdiction over the defendant.").

C.     *Scope of Review Under Section 7345*

In prior passport actions, it was unnecessary to resolve the proper scope of our review of the Commissioner's certifications. *See supra* note 3 (collecting authorities). That was so because the parties did not dispute the evidence that we should review.

In this case, however, the proper scope of review matters to our disposition. If we are limited to review on the administrative record, we would look only to the Commissioner's record of the judgment's entry—a record that does not speak to the service issue Mr. Garcia raises—to determine whether the limitations periods for collection have been extended with respect to the liabilities underpinning Mr. Garcia's seriously delinquent tax debt.

On the other hand, review on a new record developed at this Court, including any evidence introduced at a trial, would permit the Court to consider evidence regarding whether Mr. Garcia was served in the district court suit.[12]

Section 7345 itself does not expressly set out the scope of review applicable to certifications under section 7345(a). *See* I.R.C. § 7345(e). But a careful review of the text of section 7345(e) and our Court's other jurisdictional provisions—including provisions related to deficiency redeterminations, innocent spouse relief, whistleblower actions, and collection due process review—sheds light on the proper scope in passport actions.

### 1. *General Principles*

The Administrative Procedure Act (APA) created norms for judicial review of agency action. *See* 5 U.S.C. §§ 701–706; *Ax v. Commissioner*, 146 T.C. 153, 161 (2016). The Supreme Court has held that "in cases where Congress has simply provided for review, without setting forth the standards to be used or the procedures to be followed, . . . consideration is to be confined to the administrative record and . . . no de novo proceeding may be held." *United States v. Carlo Bianchi & Co.*, 373 U.S. 709, 715 (1963). The general rule under the APA is that "review of an agency decision is limited to the administrative record." *Kasper v. Commissioner*, 150 T.C. 8, 14–15 (2018) (quoting *Wilson v.*

---

[12] Although we may supplement the designated administrative record with extra-record evidence in certain circumstances in cases subject to record review, *see Berenblatt v. Commissioner*, 160 T.C. 534, 549 (2023) (discussing supplements to the administrative record in whistleblower cases); *Van Bemmelen*, 155 T.C. at 76 (same), proceedings to supplement are not well suited to this case. The evidence relevant to our inquiry (involving the circumstances relating to service on the defendant in the district court suit) would not be of a type that the IRS should be expected to collect in the ordinary course of carrying out its responsibilities. Moreover, evaluation of that evidence may well turn on matters of credibility that are best resolved at a trial in which the Court has an opportunity to observe the relevant witnesses.

*Commissioner*, 705 F.3d 980, 991 (9th Cir. 2013), *aff'g* T.C. Memo. 2010-134).

But this is a default rule, and the APA's general provisions do not supersede specific statutory provisions. *Id.* at 15; *see also Porter v. Commissioner*, 130 T.C. 115, 118 (2008) (reviewed). "When Congress enacted the APA to provide a general authorization for review of agency action in the district courts, it did not intend that general grant of jurisdiction to duplicate the previously established special statutory procedures relating to specific agencies." *Bowen v. Massachusetts*, 487 U.S. 879, 903 (1988).

### 2.    *Deficiency Redeterminations*

In proceedings to redetermine deficiencies brought under section 6213, the Tax Court reviews a new record created by the parties. *Kasper*, 150 T.C. at 15 ("One conspicuous exception to the default 'record rule' is our deficiency jurisdiction under section 6213(a) . . . ."). In the deficiency context, Congress instructs the Tax Court to make a "redetermination" of the deficiency proposed by the Commissioner. I.R.C. § 6213(a). Congress first granted the Board of Tax Appeals (the predecessor to the Tax Court) jurisdiction to "redetermine" deficiencies and additions to tax in 1924. *Porter*, 130 T.C. at 119 (citing *Ewing v. Commissioner*, 122 T.C. 32, 38 (2004), *rev'd in part, vacated in part on other grounds*, 439 F.3d 1009 (9th Cir. 2006)). Since 1926, we have also had jurisdiction to "determine" overpayments. *Id.*

These determinations and redeterminations have always been made on a new record. *Id.*; *Greenberg's Express, Inc. v. Commissioner*, 62 T.C. 324, 327–28 (1974); *see also Clapp v. Commissioner*, 875 F.2d 1396, 1403 (9th Cir. 1989); *Raheja v. Commissioner*, 725 F.2d 64, 66 (7th Cir. 1984), *aff'g* T.C. Memo. 1981-690; *Jones v. Commissioner*, 97 T.C. 7, 18 (1991). In the deficiency context, instructions by Congress to "determine" or "redetermine" a deficiency created a "special statutory procedure" related to the tax laws, in which the parties prepare a new record. *See, e.g.*, *Porter*, 130 T.C. at 119.

### 3. *Innocent Spouse Relief*

Before Congress adopted section 6015(e)(7) in 2019,[13] the Tax Court also considered petitions for relief from joint and several liability by reviewing a new record. *Porter*, 130 T.C. at 125.

When this Court initially determined whether it should review determinations of relief from joint and several liability on the administrative record, we paid particular attention to Congress's use of the word "determination" in section 6015:

> We can presume that in 1998 when Congress chose to use the word "determine" in section 6015, it did so in full awareness of our long history of de novo review. If Congress includes language from a prior statute in a new statute, courts can presume that Congress intended the longstanding legal interpretation of that language to be applied to the new statute. *Commissioner v. Estate of Noel*, 380 U.S. 678, 680–681 (1965); *United States v. 101.80 Acres*, 716 F.2d 714, 721 (9th Cir. 1983). The use of the word "determine" in section 6015(e)(1)(A) suggests that Congress intended that we conduct trials de novo in making our determinations under section 6015(f).

*Porter*, 130 T.C. at 119 (footnote omitted). That is, we read the verb "determine" to indicate review on a record created after trial at the Tax Court.

### 4. *Whistleblower Awards*

Congress has also charged the Tax Court with hearing appeals of determinations regarding whistleblower awards under section 7623(b)(4). Unlike in proceedings for redetermination of a deficiency, a determination of an overpayment, or a determination concerning innocent spouse relief, in the whistleblower context the Tax

---

[13] Section 6015(e)(7), titled "Standard and scope of review," provides that "[a]ny review of a determination made under this section shall be reviewed de novo by the Tax Court and shall be based upon—(A) the administrative record established at the time of the determination, and (B) any additional newly discovered or previously unavailable evidence." *See generally Thomas v. Commissioner*, 160 T.C. 371 (2023) (reviewed).

Court reviews the Whistleblower Office's determination on the administrative record. *Kasper*, 150 T.C. at 20.

When deciding its scope of review in whistleblower award proceedings, the Court focused on Congress's choice to use the word "appeal" rather than "determine" in the provision that gives jurisdiction to the Court. *Id.* at 17 ("If Congress's use of 'determine' was as important as our caselaw tells us it was, then the use of 'appeal' in a jurisdictional grant is telling."). In contrast to statutes governing deficiency cases and relief from joint and several liability cases, the whistleblower statute relies on the APA's default rule. *Id.* at 18.

### 5. *CDP Cases*

In collection due process cases, Congress permits taxpayers to seek "review" of an administrative determination at the Tax Court.[14] I.R.C. § 6330(d)(1). The Tax Court has previously held that it is not required to apply a limited scope of review and may accept evidence outside the administrative record in CDP cases. *See Robinette v. Commissioner*, 123 T.C. 85, 101 (2004), *rev'd*, 439 F.3d 455 (8th Cir. 2006). But the U.S. Courts of Appeals for the First, Eighth, and Ninth Circuits have concluded that, in CDP cases that are subject to an abuse of discretion standard, our review is limited to the administrative record. *See Keller v. Commissioner*, 568 F.3d 710, 718 (9th Cir. 2009), *aff'g in part* T.C. Memo. 2006-166, *and aff'g in part, vacating in part* decisions in related cases; *Murphy v. Commissioner*, 469 F.3d 27, 30–31 (1st Cir. 2006), *aff'g* 125 T.C. 301 (2005); *Robinette v. Commissioner*, 439 F.3d at 461–62.

### 6. *Determinations Regarding Section 7345 Certifications*

Section 7345(e) authorizes the Court "to *determine* whether the certification was erroneous or whether the Commissioner has failed to reverse the certification." I.R.C. § 7345(e)(1) (emphasis added). And if the Court "*determines* that such certification was erroneous," the Court may issue certain orders to the Secretary of the Treasury. I.R.C. § 7345(e)(2) (emphasis added).

In view of the history outlined above, we take Congress's choice of the word "determine" to be dispositive of the question of the proper

---

[14] Before December 18, 2015, section 6330 allowed taxpayers to "appeal" the IRS's determination to the Tax Court.

scope of review. As we have recognized before, "[i]f Congress includes language from a prior statute in a new statute, courts can presume that Congress intended the longstanding legal interpretation of that language to be applied to the new statute." *Porter*, 130 T.C. at 119 (first citing *Commissioner v. Estate of Noel*, 380 U.S. at 680–81; and then citing *101.80 Acres*, 716 F.2d at 721). Our decision in *Porter* was rendered in 2008, long before Congress adopted section 7345(e) in 2015. And the decisions involving our deficiency and overpayment jurisdiction go much further back. Given these guideposts, we take Congress's choice to refer to our task as "determin[ing] whether the certification was erroneous" to mean that (where necessary) we must make that determination based on a record developed in this Court, including (where appropriate) any evidence introduced at a trial, not simply the record available to the Commissioner during the administrative process.[15]

We note, however, that in practical terms our holding is narrow and unlikely to affect a great number of passport cases. As the Court's history with passport cases over almost a decade demonstrates, in most cases under section 7345(e), the scope of review does not matter; the outcome of the cases does not turn on the nature of the evidence we should consider. Put another way, in most passport cases, there is no need to look beyond the administrative record to resolve the issues in dispute. *See, e.g.*, *Meduty*, 160 T.C. at 529; *Adams*, 160 T.C. at 5–6 (2023); *Rowen*, 156 T.C. at 106; *Pfirrman*, T.C. Memo. 2025-22, at *4–6; *Belton v. Commissioner*, T.C. Memo. 2023-13, at *9–10. The answer to the contested matters in such cases is found in the IRS records with respect to which there is unlikely to be a genuine factual dispute. Accordingly, in such cases we anticipate no need to provide a taxpayer an opportunity to introduce evidence at trial.

Moreover, the nature of the challenges that can be made in a passport action is limited. As we have repeatedly observed, "we do not have jurisdiction to review the liabilities underlying the certification of a seriously delinquent tax debt." *Adams*, 160 T.C. at 12 (citing *Ruesch*, 154 T.C. at 295–98 (reasoning that the text of section 7345(e)(1) contains

---

[15] This conclusion is consistent with our holding in *Kasper*, 150 T.C. at 17, where we found Congress's use of the word "appeal" significant to the conclusion that review was intended to occur on the administrative record. Here, of course, Congress provided not for an appeal but for a determination.

no such jurisdictional grant)). Our holding here does not alter that conclusion.

But where, as here, contested facts outside the record make a difference to our determination, those facts must be found with the benefit of a trial.

D.    *Service in the District Court Suit*

Having considered the proper scope of review applicable to Mr. Garcia's passport action, we next consider his factual allegation—that he was never served in the district court suit. Because service of process touches on the validity of the August 11, 2014, default judgment entered against Mr. Garcia, whether Mr. Garcia was served is a genuine issue of material fact that prevents us from granting the Commissioner's Motion for Summary Judgment.

The Commissioner provided, in his First Supplement to Motion for Summary Judgment, the declaration of Susan K. Bollman, senior attorney at the IRS Office of Chief Counsel. Ms. Bollman attached a "copy of the return of service attesting to the service of the summons and complaint on petitioner" to her declaration. Signed by a revenue officer, the return of service suggests that Mr. Garcia was served personally at an IRS office in Houston.

Mr. Garcia's response to the Commissioner's Motion for Summary Judgment, however, alleges that he "never received a notice of any kind that the USA had filed a Complaint against him in District Court." Pet'r's Resp. 1. As to the return of service, he asserts that "there is absolutely no evidence that it was signed." *Id.* Mr. Garcia made similar allegations in open court at the March 2024 hearing.

The Court's role, when considering a Motion for Summary Judgment, is not to weigh competing evidence. *Cf. Sundstrand Corp.*, 98 T.C. at 520 ("If there exists any reasonable doubt as to the facts at issue, the motion must be denied."). Mr. Garcia's Response, read in the light of his statements at the hearing, raises a genuine issue of fact as to whether he was served in 2014. Trial testimony would be proper to resolve this issue. And, because this issue could determine whether Mr. Garcia's liabilities are "legally enforceable" within the meaning of section 7345(b), we may not grant the Commissioner's Motion.

III.    *Conclusion*

For the reasons stated above, the Commissioner's Motion for Summary Judgment, as supplemented, will be denied.

To reflect the foregoing,

*An appropriate order will be issued.*

Reviewed by the Court.

KERRIGAN, *C.J.*, and BUCH, NEGA, PUGH, ASHFORD, URDA, COPELAND, JONES, GREAVES, MARSHALL, WEILER, WAY, LANDY, ARBEIT, GUIDER, JENKINS, and FUNG, *JJ.*, agree with this opinion of the Court.